ROHAN RUDDOCK ET AL. *v.* DONNETTE
BURROWES ET AL.
(SC 15584)

Callahan, C. J., and Berdon, Norcott, Katz and Peters, Js.

Argued September 24, 1997—officially released January 27, 1998

*Henry D. Marcus*, for the appellants (plaintiffs).

*Deborah L. Bradley*, for the appellees (defendants).

*Opinion*

PETERS, J. The accidental failure of suit statute, General Statutes § 52-592 (a)[1] affords a plaintiff a one year window of opportunity to "commence a new action . . . for the same cause" if a prior action "has failed . . . to be tried on its merits . . . for any matter of form . . . ." The question in this certified appeal is whether a disciplinary dismissal properly may be characterized as a dismissal as a "matter of form." We conclude that the answer to this question depends upon the nature and the extent of the conduct that led to the disciplinary dismissal.

In their original action, as in the present one, the plaintiffs, Rohan Ruddock and his mother, sought to recover damages for personal injuries sustained by the named plaintiff, allegedly as a result of the defendants' negligence or recklessness. The trial court, *Hon. Harry N. Jackaway*, judge trial referee, acting pursuant to Practice Book § 251,[2] terminated the plaintiffs' action

---

[1] General Statutes § 52-592 provides in relevant part: "Accidental failure of suit; allowance of new action. (a) If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . for any matter of form . . . the plaintiff . . . may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment. . . ."

[2] Practice Book § 251 provides in relevant part: "Dismissal for Lack of Diligence

by a disciplinary dismissal arising out of the failure of the named plaintiff's mother and the plaintiffs' attorney to attend a scheduled pretrial conference.

The plaintiffs filed a motion for reconsideration and recusal. They did not contest the fact of nonattendance at the pretrial conference. Instead, they claimed that: (1) their attorney had been unable to appear in timely fashion because of an unavoidable accident involving his car; and (2) he had tried to communicate his unavoidable delay to court personnel. Denying the plaintiffs' motion, the court exercised the discretion conferred upon it by General Statutes § 52-212 (a)[3] and reaffirmed the judgment of dismissal. The plaintiffs acknowledge that, regardless of whether their absence resulted from mistake, inadvertence or excusable neglect, the judgment of dismissal in the original action was a disciplinary dismissal.[4]

Thereafter, pursuant to § 52-592 (a), the plaintiffs filed a new complaint alleging the same cause of action.

"If a party shall fail to prosecute an action with reasonable diligence, the court may, after hearing, on motion by any party to the action pursuant to Sec. 196, or on its own motion, render a judgment dismissing the action with costs. . . ."

[3] General Statutes § 52-212 provides in relevant part: "Reopening judgment upon default or nonsuit. (a) Any judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense. . . ."

[4] The plaintiffs could have challenged the merits of the judgment of dismissal by taking a timely appeal therefrom. On an appeal from a judgment following a denial of a motion to open pursuant to § 52-212 (a), however, the standard of appellate review is whether the trial court's judgment was an abuse of its discretion. See, e.g., *Biro* v. *Hill*, 231 Conn. 462, 468, 650 A.2d 541 (1994); *In re Baby Girl B.*, 224 Conn. 263, 294–95, 618 A.2d 1

In response, the defendants filed a motion for summary judgment, in which they claimed that the plaintiffs' action was time barred[5] because § 52-592 (a) does not permit a new action if the original action was terminated as the result of a disciplinary dismissal. In opposition to the defendants' motion, the plaintiffs not only challenged its legal premise but also filed an affidavit raising again the factual issue of mistake, inadvertence or excusable neglect that they had raised in their motion for reconsideration.

The court, *Arena, J.*, granted the defendants' motion for summary judgment, upholding their claim that, as a matter of law, the dismissal of the plaintiffs' original cause of action for disciplinary reasons precluded their subsequent invocation of § 52-592 (a). The court reasoned that any other ruling would "frustrate the reasoned dismissal by Judge Jackaway, and [would] permit counsel to ignore the orders of the court by virtue of an overextension of [the statute]." In light of this conclusion of law, the court made no reference in its memorandum of decision to the factual issues raised by the plaintiffs' affidavit.[6] Thereafter, in response to the defendants' motion for clarification, the court ruled that it was immaterial whether the original dismissal had been based "on the plaintiff[s]' failure to appear at one or more than one pretrial."[7]

---

(1992); *Gionfrido* v. *Wharf Realty, Inc.*, 193 Conn. 28, 34, 474 A.2d 787 (1984). The plaintiffs elected not to take such an appeal.

[5] The plaintiffs have not challenged the argument of the defendants that, if § 52-592 (a) does not permit this action, the action would be barred by the otherwise applicable statute of limitations. General Statutes § 52-584.

[6] The original court, similarly, had not made any findings of fact about the reasons for the plaintiffs' nonattendance at the pretrial conference.

[7] In its memorandum of decision, the court stated at one point that the original action had been dismissed because of "the plaintiff[s]' failure to appear at several pretrial conferences." At a later point, the memorandum stated that the dismissal had resulted from the failure of the plaintiffs to appear "at *a* previously scheduled pretrial conference." (Emphasis added.)

The defendants filed a motion for rectification or articulation to clarify this discrepancy. In their motion, the defendants conceded that "the original

In a per curiam opinion, the Appellate Court affirmed the judgment of the trial court. *Ruddock* v. *Burrowes*, 43 Conn. App. 913, 684 A.2d 282 (1996). In the absence of any indication in the record to the contrary, we may presume that the Appellate Court adopted the reasoning of the trial court, *Arena, J.* Having granted the plaintiffs' petition for certification,[8] we reverse the judgment of the Appellate Court and direct a remand to the trial court for further proceedings.

The procedural posture of this case determines the scope of our review. The court, *Arena, J.*, in ruling on the motion for summary judgment, concluded, as a matter of law, that, because of the disciplinary nature of the dismissal, the plaintiffs had failed to meet their burden of establishing that they were entitled to invoke § 52-592 (a). Unless we affirm this legal conclusion, the unresolved factual issues raised by the plaintiffs' affidavit require us to overturn the summary judgment. "Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence

action was dismissed because of failure to appear at *one* pretrial . . . ." (Emphasis added.) At oral argument in this court, the defendants again conceded that "there was only one missed pretrial in this case." We are, therefore, surprised at the statement in the defendants' brief that the significance of their motion was merely to alert the court to an apparent *typographical* mistake in its memorandum of decision.

[8] The issue on which we granted the plaintiffs' petition for certification to appeal is: "Did the Appellate Court properly conclude that the prior dismissal of the plaintiff[s]' claims did not bring this action within the provisions of the accidental failure of suit statute, General Statutes § 52-592?" *Ruddock* v. *Burrowes*, 239 Conn. 955, 688 A.2d 326 (1996).

of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381." (Citations omitted; internal quotation marks omitted.) *Doty* v. *Mucci*, 238 Conn. 800, 805–806, 679 A.2d 945 (1996); *Bruttomesso* v. *Northeastern Connecticut Sexual Assault Crisis Services, Inc.*, 242 Conn. 1, 5–6, 698 A.2d 795 (1997); *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995); *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105–106, 639 A.2d 507 (1994).

The arguments of the parties in this court do not fully reflect the law governing summary judgments. Understandably, the defendants reiterate the argument, on which they prevailed in the trial court, that disciplinary dismissals are *never* "a matter of form" for the purposes of § 52-592 (a). They do not address the factual issues raised by the plaintiffs' affidavit. The plaintiffs, in turn, argue for a more nuanced consideration of the underlying circumstances of the disciplinary dismissal. Their argument[9] appears to assume, however, that, without any findings of fact, we should accept the accuracy of the representations contained in their affidavits to Judge Jackaway and Judge Arena.[10] Neither argument is persuasive.

---

[9] The dissenting opinion makes the same assumption.

[10] In its memorandum of decision, the court, *Arena, J.*, discussed neither the plaintiffs' affidavit nor the failure of the defendants to file any opposing affidavit. Because Practice Book § 380 counsels the filing of an opposing affidavit, the court might have been entitled to draw an adverse inference from the absence of such an affidavit. However, "[t]he inference which may ordinarily be drawn from the failure of a party to file an opposing affidavit is not warranted where the other party is the only person having knowledge of the particular facts involved." *Batick* v. *Seymour*, 186 Conn. 632, 645–46, 443 A.2d 471 (1982); *Nolan* v. *Borkowski*, 206 Conn. 495, 504, 538 A.2d 1031 (1988).

Whether § 52-592 (a) categorically excludes disciplinary dismissals from the class of dismissals that properly may be characterized as arising from "any matter of form" is a question that lies at the intersection of two principles firmly established in our law. On the one hand, in a long line of cases, we have held that § 52-592 (a) is remedial in nature and, therefore, warrants a broad construction. See, e.g., *Lacasse* v. *Burns*, 214 Conn. 464, 470, 572 A.2d 357 (1990); *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 728, 557 A.2d 116 (1989); *Broderick* v. *Jackman*, 167 Conn. 96, 97, 355 A.2d 234 (1974); *Ross Realty Corp.* v. *Surkis*, 163 Conn. 388, 393, 311 A.2d 74 (1972); *Baker* v. *Baningoso*, 134 Conn. 382, 387, 58 A.2d 5 (1948); *Johnston* v. *Sikes*, 56 Conn. 589, 591–92 (Superior Court 1888). Apparently acceding in our assessment of its intent, the legislature, over the years, repeatedly has broadened eligibility for the relief afforded by the statute. *Broderick* v. *Jackman*, supra, 97–99. On the other hand, our decisions also have underscored the importance of trial court caseflow management of crowded dockets. "Caseflow management is based upon the premise that it is the responsibility of the court to establish standards for the processing of cases and also, when necessary, to enforce compliance with such standards. Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system." *In re Mongillo*, 190 Conn. 686, 691, 461 A.2d 1387 (1983); *Gionfrido* v. *Wharf Realty, Inc.*, 193 Conn. 28, 32–33, 474 A.2d 787 (1984). In the event of noncompliance with a court order, the directives of caseflow management authorize trial courts, in appropriate circumstances, to take action against either the errant attorney or the litigant who freely chose the attorney. *Link* v. *Wabash R. Co.*, 370 U.S. 626, 633–34, 634 n.10, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962); *Gionfrido* v. *Wharf Realty, Inc.*, supra, 33–34; *Thode* v. *Thode*, 190 Conn. 694, 698, 462 A.2d 4 (1983);

*In re Mongillo,* supra, 692; *Stanley* v. *Hartford,* 140 Conn. 643, 648, 103 A.2d 147 (1954).

This case requires us, for the first time, to find the proper accommodation between these competing principles. In the absence of further legislative guidance, we conclude that disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a).

We already have observed that, in appropriate cases, "a dismissal entered pursuant to [Practice Book] § 251 would not bar a subsequent action brought under the authority of § 52-592." *Lacasse* v. *Burns,* supra, 214 Conn. 471; *Gionfrido* v. *Wharf Realty, Inc.,* supra, 193 Conn. 34 n.6. Disciplinary dismissals do not, in all cases, demonstrate the occurrence of misconduct so egregious as to bar recourse to § 52-592. Cf. *Skibeck* v. *Avon,* 24 Conn. App. 239, 242–43, 587 A.2d 166, cert. denied, 219 Conn. 912, 593 A.2d 138 (1991).[11] Whether the statute applies cannot be decided in a factual vacuum.[12] To

---

[11] We do not agree, therefore, with the statement in the dissenting opinion that, "[t]his court has always considered that disciplinary dismissals due to a lawyer's misconduct constitute a failure 'for any matter of form' within the meaning of § 52-592 (a)." See *Hughes* v. *Bemer,* 206 Conn. 491, 495, 538 A.2d 703 (1988); *Parrott* v. *Meacham,* 161 Conn. 573, 575, 290 A.2d 335 (1971); *Baker* v. *Baningoso,* supra, 134 Conn. 387; *Walworth* v. *Hartford Hospital,* 23 Conn. App. 404, 408–409, 580 A.2d 545 (1990). The fact that courts have allowed plaintiffs access to § 52-592 (a) in some cases involving § 251 dismissals does not mean that we must allow recourse to the statute if the attorney's misconduct is egregious.

[12] A trial court, for example, might find an attorney's misconduct to be egregious if the attorney represented that his nonappearance was caused by difficulties with his car without disclosing that he had ready access to alternative transportation. A trial court might make a similar finding if, in one case, the attorney repeatedly, and without credible excuse, delayed scheduled court proceedings. Nonappearances that interfere with proper judicial management of cases, and cause serious inconvenience to the court and to opposing parties, are categorically different from a mere failure to respond to a notice of dormancy pursuant to Practice Book § 251; see *Lacasse* v. *Burns,* supra, 214 Conn. 474; or a single failure to appear, in a timely fashion, after a luncheon recess. See *Gionfrido* v. *Wharf Realty, Inc.,* supra, 193 Conn. 34 n.6.

enable a plaintiff to meet the burden of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was a "matter of form" in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect. See General Statutes § 52-212.[13]

The burden of bringing a new action sufficiently vindicates the demands of caseflow management. " '[I]t cannot be said that a disciplinary dismissal that does not preclude a litigant from commencing another action on the same claim is wholly ineffective as a sanction, since additional legal fees and expenses must be incurred in doing so and the new suit must normally await the disposition of earlier cases.' " *Lacasse* v. *Burns*, supra, 214 Conn. 474, quoting *Milgrim* v. *Deluca*, 195 Conn. 191, 195, 487 A.2d 522 (1985).

Our conclusion in this case is consistent with previous cases arising under § 52-592 (a).[14] We have not often decided that a plaintiff, after a dismissal under an applicable rule of practice, should be denied access to the statute because the prior judgment was not a "matter of form." When we have done so, our decision has focused on conduct other than mistake, inadvertence or excusable neglect. For example, we have held that § 52-592 (a) affords no relief in cases in which a plaintiff's prior action was dismissed because the plaintiff withdrew it voluntarily; see *Parrott* v. *Meacham*, 161

[13] That statute has language resembling our construction of § 52-592 (a). See footnote 3 of this opinion.

[14] Many of the cases cited by the defendants to buttress their argument in favor of the trial court's judgment in this case are inapposite because they arise, not under the remedial auspices of § 52-592 (a), but under the discretionary auspices of § 52-212. See, e.g., *Jaconski* v. *AMF, Inc.*, 208 Conn. 230, 543 A.2d 728 (1988); *Jaquith* v. *Revson*, 159 Conn. 427, 270 A.2d 559 (1970).

Conn. 573, 575, 290 A.2d 335 (1971); *Baker* v. *Baningoso*, supra, 134 Conn. 387; or consented to its dismissal. Such consent may be inferred from a plaintiff's failure to file a memorandum in opposition to a defendant's motion to strike; *Hughes* v. *Bemer*, 206 Conn. 491, 495, 538 A.2d 703 (1988); or from a plaintiff's inordinate delay in appointing an administrator or executor. *Walworth* v. *Hartford Hospital*, 23 Conn. App. 404, 408–409, 580 A.2d 545 (1990). The rationale of those cases does not compel denial of relief under § 52-592 (a) to the plaintiffs in the present case if they can prove the circumstances of the dismissal of their case to be as alleged.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further factual findings to determine the circumstances of the plaintiffs' claimed justification for nonappearance at the pretrial conference.

In this opinion CALLAHAN, C. J., and NORCOTT, Js., concurred.

BERDON, J., with whom, KATZ, J., joins, dissenting. The majority for the first time holds that a disciplinary dismissal[1] as a result of the conduct of a lawyer is not

---

[1] Whether the trial court in the original action properly dismissed the action pursuant to Practice Book § 251 and whether the trial court complied with the notice requirements and the right to be heard in § 251 are not at issue before this court. I assume, for the purposes of this case, that the dismissal of the original action for the failure of the lawyer to appear at a pretrial conference was authorized under § 251.

Practice Book § 251 provides: "If a party shall fail to prosecute an action with reasonable diligence, the court may, after hearing, on motion by any party to the action pursuant to Sec. 196, or on its own motion, render a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. Judgment files shall not be drawn except where an appeal is taken or where any party so requests.

"If a case is printed on a dormancy calendar pursuant to the dormancy program administered under the direction of the chief court administrator, and a motion for default for failure to plead is filed pursuant to Sec. 128,

necessarily a "matter of form" that would permit a plaintiff to commence a new action as a matter of right pursuant to General Statutes § 52-592. Rather, according to the majority, it would depend upon the extent of the egregiousness of the lawyer's conduct. In other words, as I understand the majority, if the lawyer's conduct that resulted in the dismissal is not very bad— such as a "mistake, inadvertence or excusable neglect"—then, it is a "matter of form" and relief is available under § 52-592; but, on the other hand, if it is egregious, then the client is penalized by having his or her cause of action dismissed even though the action was brought for compensation for serious injuries as a result of negligent conduct by the defendant. The bottom line of the majority opinion is that a client may be punished for the transgressions of his or her lawyer.

In reaching this draconian result, the majority fails to consider the realities of the practice of law. Trial lawyers, in seeking to do justice for their clients, must accommodate the schedules of numerous trial courts, not only on the state level, but also on the federal level. The overwhelming number of our trial judges, who have practiced law themselves, appreciate this and, are able to accommodate the conflicting schedules. But, in doing so, the trial judges are still able to maintain firm control of their dockets in order to move the business of the court.

Nevertheless, I fully understand that there are some lawyers who attempt to take advantage of the system. In those instances, the law should not deny the client justice because of the misconduct of a lawyer. Clients should not be expected to micromanage their lawyer's handling of the case. Although the plaintiffs selected their lawyer, as the majority points out, it is the judicial

only those papers which close the pleadings by joining issues, or raise a special defense, may be filed by any party, unless the court otherwise orders."

branch that licensed that lawyer and enabled him to practice law. Moreover, attorney "misconduct is amenable to direct punitive sanctions [such as Practice Book § 986 (3) and (4)[2]] that can prevent attorneys from systemically engaging in misconduct that would disrupt the trial process. There is no need to take steps that will inflict the punishment on the [client]," who, like the plaintiffs in this case, did not participate in the lawyer's misconduct. *Taylor* v. *Illinois*, 484 U.S. 400, 435, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988) (Brennan, J., dissenting).

Notwithstanding this public policy concern I have with respect to the new rule embraced by the majority, this decision is contrary to this court's precedent, it violates our rules of statutory construction, including the liberal interpretation that must be afforded to remedial statutes, it takes this court on an excursion that will produce inconsistent and uncertain rulings that will, I am sure, result in grave injustices, and it violates basic principles of fairness.

This court has always considered that disciplinary dismissals due to a lawyer's misconduct constitute a failure "for any matter of form" within the meaning of § 52-592 (a).[3] See *Pintavalle* v. *Valkanos*, 216 Conn. 412,

---

[2] Practice Book § 986 provides in relevant part: "The judicial authority may punish by fine or imprisonment or both . . .

"(3) Any officer of the court who misbehaves in the conduct of his official court duties; or

"(4) Any person disobeying in the course of a civil or criminal proceeding any order of a judicial authority."

Section 986 has since been temporarily redesignated as § 7G, effective October 1, 1997, and subsection (4) was made applicable to family and juvenile proceedings as well.

[3] I agree that there is a single Appellate Court case; *Skibeck* v. *Avon*, 24 Conn. App. 239, 587 A.2d 166, cert. denied, 219 Conn. 912, 593 A.2d 138 (1991); wherein the Appellate Court affirmed the trial court's grant of summary judgment in favor of the defendant and in effect refused to apply the savings provision of § 52-592 to a Practice Book § 251 dismissal. But that case is certainly an aberration. Indeed, the Appellate Court in *Skibeck* curiously

581 A.2d 1050 (1990); *Lacasse* v. *Burns*, 214 Conn. 464, 572 A.2d 357 (1990); *Gionfrido* v. *Wharf Realty, Inc.*, 193 Conn. 28, 474 A.2d 787 (1984). In 1984, this court took it upon itself to indicate to the plaintiff, who lost his appeal from the trial court's denial of his motion to open a judgment of dismissal under § 251, that he was "not without remedy and, inter alia, may commence a new action pursuant to General Statutes § 52-592 . . . ." *Gionfrido* v. *Wharf Realty, Inc.*, supra, 34 n.6. The court then noted that a judgment of "dismissal for failure to prosecute is failure of a 'matter of form.' " Id., citing *McMahon* v. *Colaci*, 36 Conn. Sup. 269, 271, 418 A.2d 98 (1980). In *Lacasse*, this court affirmed the trial court's ruling, which was based largely on *Gionfrido*, "that a dismissal entered pursuant to § 251 would not bar a subsequent action brought under the authority of § 52-592." *Lacasse* v. *Burns*, supra, 471. In *Pintavalle*, this court cited *Lacasse* to explain why the plaintiff

conceded that by stating: "In the case before us, the trial court concluded that the plaintiff's diligence did not fall within the reasonable portion of the spectrum of diligence contemplated by § 251. This fact alone, however, cannot overcome the broad remedial provisions of § 52-592. *Lacasse* v. *Burns*, [214 Conn. 464, 474, 572 A.2d 357 (1990)]." *Skibeck* v. *Avon*, supra, 242. I note that no particular significance should be given to the fact that this court refused to grant certification in *Skibeck*. Cf. *New York, New Haven & Hartford R. Co.* v. *California Fruit Growers Exchange*, 125 Conn. 241, 251, 5 A.2d 353 (1939) (denial of writ of certiorari by United States Supreme Court "imports no expression of opinion upon the merits of the case" [internal quotation marks omitted]).

The majority, in footnote 11 of its opinion, incorrectly relies on four other cases to support its assertion that egregious § 251 dismissals do not fall within the broad remedial provisions of § 52-592: *Hughes* v. *Bemer*, 206 Conn. 491, 495, 538 A.2d 703 (1988) (order that enters pursuant to Practice Book § 155, which requires adverse party who objects to motion to strike to file memorandum of law, is not "matter of form" under § 52-592 [a]); *Parrott* v. *Meacham*, 161 Conn. 573, 575, 290 A.2d 335 (1971) (plaintiff, who voluntarily withdraws action, may not take advantage of accidental failure of suit statute to commence new action); *Baker* v. *Baningoso*, 134 Conn. 382, 387, 58 A.2d 5 (1948) (same); and *Walworth* v. *Hartford Hospital*, 23 Conn. App. 404, 408–409, 580 A.2d 545 (1990) (dismissal pursuant to Practice Book § 143, which requires adverse party to motion to dismiss to file memorandum of law, did not constitute failure "for any matter of form").

was able to file a third action against the defendant after his second action had been dismissed pursuant to § 251 for failure to prosecute with reasonable diligence. *Pintavalle* v. *Valkanos*, supra, 414 n.3.

Indeed, it was made crystal clear what was meant by an action being defeated "for any matter of form" in the 1888 case of *Johnston* v. *Sikes*, 56 Conn. 591 (Superior Court 1888). In *Sikes*, the court concluded that the addition of the phrase "any matter of form" to the accidental failure of suit statute (then designated as General Statutes [1888 Rev.] § 1386) "was to make the statute exceedingly broad and sweeping in its scope"; id., 591–92; and that the phrase "was used in contra-distinction to matter of substance, as embracing the real merits of the controversy between the parties." Id., 592. Furthermore, we can assume that the legislature has acceded to our broad definition of a "matter of form." In the more than 100 years since the court decided *Sikes*, the legislature never took action to contradict this court's interpretation of the accidental failure of suit statute. See *State* v. *Spears*, 234 Conn. 78, 90, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995) ("[w]e presume that the legislature has knowledge of this longstanding construction which this court has given to the objective and purpose of legislation in this field" [internal quotation marks omitted]). Rather, as the majority concedes, during the ensuing years since the adoption of the statutory predecessors of § 52-592 (a) in 1862; see Public Acts 1862, c. 14; the legislature repeatedly visited the statute and *broadened* the eligibility for relief. See *Broderick* v. *Jackman*, 167 Conn. 96, 97–99, 355 A.2d 234 (1974).

Moreover, § 52-592 (a), "is remedial and is to be liberally interpreted." *Ross Realty Corp.* v. *Surkis*, 163 Conn. 388, 393, 311 A.2d 74 (1972); *Baker* v. *Baningoso*, 134 Conn. 382, 387, 58 A.2d 5 (1948); *Johnston* v. *Sikes*, supra, 56 Conn. 596. Further, "[i]t is the policy of the

law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court.[4] The design of the rules of practice is both to facilitate business and to advance justice . . . ." *Snow* v. *Calise*, 174 Conn. 567, 574, 392 A.2d 440 (1978). Consequently, § 52-592 (a) should be "so construed as to advance the remedy rather than to retard it." (Internal quotation marks omitted.) *Johnson* v. *Wheeler*, 108 Conn. 484, 486, 143 A.2d 898 (1928). Indeed, as pointed out by Justice Shea in his concurring opinion in *Andrew Ansaldi Co.* v. *Planning & Zoning Commission*, 207 Conn. 67, 540 A.2d 59 (1988), the "accidental failure of suit statute, permitting a new action to be commenced after the original action has been defeated 'for any matter of form' "; id., 76; was designed to ameliorate the harshness of the common law in order for parties to have their cases resolved, not on the basis of the neglect of the lawyer, but rather on the merits. Id., 75–76. Justice Shea explained: "Centuries ago the common law courts of England similarly insisted upon rigid adherence to the prescribed forms of action, resulting in the defeat of many suits for technical faults rather than upon their merits. Some of that ancient jurisprudence migrated to this country with the settlers and has affected the development of procedural law in this state. Beginning in the middle of the nineteenth century, however, our legislature enacted numerous procedural reforms applicable to ordinary civil actions that are designed to ameliorate the consequences of many deviations from the prescribed norm, which result largely from the fallibility of the legal profession, in order generally to provide errant parties with an opportunity for cases to be

[4] The majority would have us believe that the legislature intended to deprive the plaintiffs, a fourteen year old boy and his mother, their day in court to recover damages from a defendant who allegedly operated his motor vehicle in a negligent manner, thereby striking the child while he was riding his bicycle causing him serious physical injuries, merely because the lawyer failed to appear at a pretrial conference.

resolved on their merits rather than dismissed for some technical flaw." Id.

The majority's *novel* interpretation of § 52-592 will also cause confusion. The degree of egregiousness that will bar a litigant from bringing a new action under § 52-592 will vary from case to case. Furthermore, the extent of that egregiousness will be determined, not by the trial judge who dismissed the original action, but, rather, by another court when ruling on the applicability of § 52-592. Such inconsistent and uncertain rulings will, I am sure, result in grave injustices.

Finally, it is apparent that the plaintiffs have been misled by this court. Rightfully assuming that disciplinary dismissals are a "matter of form" under § 52-592,[5] the plaintiffs took no appeal from the dismissal of the original action.[6] The majority of this court now changes the rule in midstream subjecting the plaintiffs to the possibility of never having their case heard on the merits. That violates basic principles of fairness.

In light of precedent, long-standing rules of statutory construction, public policy concerns, and principles of fairness, the plaintiffs should be allowed to pursue their action in accordance with § 52-592.

Accordingly, I dissent.

---

[5] See, e.g., *Gionfrido* v. *Wharf Realty, Inc.*, supra, 193 Conn. 34 n.6.

[6] See footnote 1 of this dissent.