[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTIONS FOR SUMMARY JUDGMENT
The accidental failure of suit statute, Conn. Gen. Stat. § 52-592(a), allows the commencement of a new action when a prior action has failed "for any matter of form." In Ruddock v.Burrowes, 243 Conn. 569, 706 A.2d 967 (1998), our Supreme Court held that whether a disciplinary dismissal properly may be characterized as a "matter of form" "depends upon the nature and the extent of the conduct that led to the disciplinary dismissal." Id. at 570. The question that must ultimately be determined is whether the misconduct in question was "so egregious as to bar recourse to § 52-592." Id. at 576. This CT Page 15091 court has conducted a Ruddock hearing in the instant case to determine the proper characterization of the misconduct that led to a disciplinary dismissal of a predecessor action. For the reasons set forth below, the court — using Ruddock as a guide — finds that the misconduct in question bars recourse to §52-592.
This is a medical malpractice action arising from a tragic series of events occurring early in 1989. The plaintiffs are the administrators of the estates of two decedents: Haruna Gillum and Angelina Bryant. Gillum received psychiatric care from Yale University in the fall of 1988 and the early winter of 1989. The plaintiffs claim that Yale and a psychiatrist named James Scott, also named as a defendant, failed to properly evaluate what they claim was Gillum's deteriorating mental and emotional condition, "particularly late in January and early February, 1989." On February 13, 1989, Gillum drove to Delaware and killed Bryant, with whom he had some sort of romantic relationship. He then killed himself.
To put the procedural matter in a nutshell, the plaintiffs originally commenced an action entitled Gillum v. YaleUniversity, No. 314737 (N.H.J.D.) ("Gillum I"). GillumI was dismissed three times for disciplinary reasons, the last dismissal occurring on January 14, 1997, for failure of counsel to attend a pretrial conference as a result of scheduling confusion in the office of plaintiffs' counsel. After two different motions to reopen had been denied, the plaintiffs commenced the action now before the court ("Gillum II") by service of process on January 15, 1998. (Because the process forGillum II was delivered to the sheriff within the time limited by law and served within fifteen days of the delivery, there is no claim that the plaintiffs' right of action has been lost because of the statute of limitations. Conn. Gen. Stat. § 52-593a(a).)
On March 9, 1998, defendant Scott filed a motion to dismissGillum II, asserting the unavailability of Conn. Gen. Stat. §52-592. (No. 101.) The motion came before the court on May 11, 1998, and an evidentiary hearing was scheduled for July 6, 1998. After three different requests for continuance by the plaintiffs had been granted — the last one as a final continuance at the insistence of the court — an evidentiary hearing was held on November 23, 1998. No testimony was submitted, but several documentary exhibits, including a deposition of plaintiffs' counsel, were received. After consultation with counsel, the CT Page 15092 court found that the behavior of the plaintiffs, whatever its other shortcomings, did not deprive the court of jurisdiction to hear the case, that there was no genuine issue as to any material fact, and that the motion to dismiss should instead be treated as a motion for summary judgment asserting a Ruddock claim. All parties agreed that this procedure was appropriate. Given this ruling, Yale University requested permission to file its own motion for summary judgment. This motion was granted, again without objection. Argument on both motions was heard on December 21, 1998.
The relevant events of Gillum I and Gillum II can be most usefully presented in tabular form as follows:
Gillum I
2/13/89 — Death of the decedents.
2/5/91 — 90 day extension granted.
4/18/91 — Service of process.
9/25/91 — Discovery requests submitted by defendants.
12/1/92 — Dormancy dismissal by the clerk. (P.B. § 251.) (First dismissal.)
4/8/93 — Motion to open filed.
4/23/93 — Motion to open granted. (Licari, J.)
6/9/93 — Motion to dismiss for failure to respond to discovery requests filed.
6/29/93 — Motion to dismiss granted. (Second dismissal.)
10/4/93 — Motion to reopen filed. (The motion was apparently lost by the court.)
1/7/94 — Answers to discovery requests submitted by plaintiffs.
2/6/94 — Duplicate motion to reopen filed.
3/7/94 — Motion to reopen granted. (Licari, J.) CT Page 15093
1/14/97 — Judgment of dismissal for failure of counsel to attend pretrial conference. (Silbert, J.) (Third dismissal.)
4/22/97 — Motion to reopen filed.
9/15/97 — Motion to reopen denied. (Silbert, J.)
10/23/97 — Second motion to reopen filed.
12/1/97 — Second motion to reopen denied. (Silbert, J.)
Gillum II
1/15/98 — Service of Process.
3/9/98 — Motion to dismiss filed.
5/11/98 — Motion to dismiss appears on the court's calendar. Evidentiary hearing scheduled for 7/6/98 after consultation with all counsel.
6/26/98 — Motion for continuance filed by plaintiffs.
6/30/98 — Motion for continuance granted. Hearing rescheduled for 8/17/98.
8/5/98 — Motion for continuance filed by plaintiffs and granted by the court. Hearing rescheduled for 9/21/98.
9/10/98 — Motion for continuance requested by plaintiffs (not file stamped until a later date) and granted by the court. Court orders hearing date of 11/23/98 as a final extension.
11/23/98 — Evidentiary hearing.
12/7/98 — Yale University's motion for summary judgment filed.
12/21/98 — Oral argument of both motions.
This is not a pretty picture. There has been lackadaisical behavior by the plaintiffs at every turn. The problem is not simply that Gillum I was dismissed three times. The real problem is that there was procrastination and delay throughout the entire existence of Gillum I. This problem is compounded by the fact that the same pattern of delay has continued throughout the CT Page 15094 fitful life of Gillum II. The responsibility for this state of affairs lies squarely with the plaintiffs.
The defendants urge the court to apply a "three strikes" analysis. But while that approach has the virtue of simplicity — a virtue that has made it much in demand in the field of penal legislation as well as that of baseball — it is far too mechanistic to use in a Ruddock analysis. Admittedly, an attorney responsible for a case that has already been dismissed two times should reasonably be expected to be especially vigilant to ensure that the case is not dismissed a third time. Unavoidable circumstances ranging from car trouble to illness to family emergencies can, however, always occur, and, when such circumstances are promptly brought to the attention of the court, punitive sanctions should not be employed, regardless of the fact that the case in question may have been previously dismissed.
Ruddock instead requires the court to look for a pattern of dilatory behavior. In an important footnote, the Supreme Court explains that, "Nonappearances that interfere with proper judicial management of cases and cause serious inconvenience to the court and to opposing parties are categorically different from a mere failure to respond to a notice of dormancy pursuant to Practice Book § 251 . . . or a single failure to appear, in a timely fashion, after a luncheon recess." 243 Conn. at 576
n. 12. Unhappily, Gillum I could serve as the poster child for dilatory behavior dismissals. Each dismissal in Gillum I was itself followed by a lengthy delay — almost to the limit of the time allowed by law — before a motion to reopen was filed. After the case had been dismissed (for a second time) for failure to respond to discovery requests, the plaintiffs waited almost six months before ultimately responding to the discovery requests in question. Given this history of egregious delay, the decisions of Silbert, J. not to reopen the case were eminently understandable. Beyond all this, the commencement of Gillum II on January 15, 1998, was a year and a day after the dismissal of Gillum I. While the plaintiffs were saved in this instance by Conn. Gen. Stat. § 52-593a(a), it is fair to say that, even then, they displayed no sense of urgency and were content to wait until the final tick of the clock. Even after Gillum II was filed, the plaintiffs repeatedly requested continuances for a hearing on the motion to dismiss. The court was finally compelled to issue a final extension, fearing that — absent such an insistence — the trail of requests for continuance, like the line of kings inMacbeth, would stretch out to the crack of doom. CT Page 15095
Ruddock requires the trial court to determine whether, under the totality of the circumstances, the case in question "demonstrate[s] the occurrence of misconduct so egregious as to bar recourse to § 52-592." 243 Conn. at 576. The burden is on the plaintiffs "to make a factual showing that the prior dismissal was a `matter of form.'" Id. at 577. The plaintiffs here have not carried this burden.
The court is aware that, in making this finding, it may be punishing a client "for the transgressions of his or her lawyer."Ruddock v. Burrowes, supra, 243 Conn. at 579. (Berdon, J., dissenting.) The court is nevertheless bound by the decision of the Ruddock majority. It has examined the record and made its findings in an attempt to follow that opinion as faithfully as possible.
For the reasons discussed above, Scott's motion to dismiss is treated as a motion for summary judgment. Treating it as such, it is granted. Yale's motion for summary judgment is also granted. Judgment shall enter for the defendants.
Jon C. Blue Judge of the Superior Court