[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT HOSPITAL'S MOTION FOR SUMMARY JUDGMENT
In this case, the defendant Lawrence Memorial Hospital has filed a motion for summary judgment on the ground that the plaintiffs CT Page 5317 claim is barred by the applicable statutes of limitation and is not "saved" by the "Accidental Failure of Suit Statute," § 52-592 of the General Statutes. The case of Ruddock v. Burrowes, 243 Conn. 569
(1998), sets out various guidelines governing the application of the statute and the case of Gillum v. Yale-New Haven Hospital, 5 Conn. Ops. 40 (Blue, J., 1999), cannot be improved on as an interpretation of the Ruddock case.
What are the guidelines set forth in Ruddock? Gillum makes the following observations:
 "The accidental failure of suit statute, Conn. Gen. Stat. § 52-592 (a), allows the commencement of a new action when a prior action has failed `for any matter of form.' In Ruddock v. Burrowes, 243 Conn. 569, 706 A.2d 967 (1998), our Supreme Court held that whether a disciplinary dismissal properly may be characterized as a `matter of form' `depends upon the nature and the extent of the conduct that led to the disciplinary dismissal.' Id. at 570. The question that must ultimately be determined is whether the misconduct in question was `so egregious as to bar recourse to § 52-592. Id. at 576."
 "Unavoidable circumstances ranging from car trouble to illness to family emergencies can, however, always occur, and, when such circumstances are promptly brought to the attention of the court, punitive sanctions should not be employed, regardless of the fact that the case in question may have been previously dismissed.
 Ruddock instead requires the court to look for a pattern of dilatory behavior. In an important footnote, the Supreme Court explains that, `Nonappearances that interfere with proper judicial management of cases and cause serious inconvenience to the court and to opposing parties are categorically different from a mere failure to respond to a notice of dormancy pursuant to Practice Book § 251 . . . or a single failure to appear, in a timely fashion, after a luncheon recess. 243 Conn. at 576, n. 12."
 Ruddock requires the trial court to determine whether, under the totality of the circumstances, the case in question `demonstrate(s) the occurrence of misconduct CT Page 5318 so egregious as to bar recourse to § 52-592.' 243 Conn. at 576. The burden is on the plaintiffs `to make a factual showing that the prior dismissal was a matter of form.' Id. at 577."
The dissent in Ruddock sharply disagrees with its result. It notes the whole purpose of § 52-592 was to permit matters to be tried on their merits and by definition a matter of form has nothing to do with the resolution of a case on the merits. Also, it is said that there are no standards capable of defining what is "egregious." One judge may decide the statute cannot be resorted to while on the same or similar set of facts, another judge might view the statute as saving the litigation. Basically, the dissent believes the majority's decision punishes the client for the transgressions of the lawyer and although the client hires the lawyer, "the law should not deny the client justice because of the misconduct of a lawyer." Id. at 579.
But there are many situations where a lawyer's mistakes or transgressions prejudice a client, that is an unfortunate cost of the adversary system, and the law does provide a mechanism at least in part to ameliorate and correct the effects of that prejudice.
Furthermore, it is true that defining something as "egregious" does not provide much in the way of standards to guide trial and appellate judges.
And admittedly, this is an area where discretion is important and the judge who originally dismisses a matter probably would have a better ability to rule on the fairness of resurrecting litigation under the auspices of § 52-592. But it is not beyond human planning capacity to provide that the original judge who granted the motion to dismiss should hear any summary judgment motion directed against a suit based on § 52-592. Besides, as case law at the trial and appellate level develops the ambit of appropriate judicial discretion in determining whether conduct is so egregious that § 52-592 should not apply will be set forth in standards and guidelines.
In determining the applicability of the statute, a good starting point is to consider the important policy that application of an ameliorative statute like § 52-592 limits and overrules — that is the policy expressed in the various statutes of limitations. Perhaps a way to define "egregious" is not to merely have a list of horrors listing various procedural mistakes, motions to dismiss, motions to reopen, motions for continuance, etc. These matters and other factors reflected in the file should be weighed in light of how adversely the policies sought to be effectuated and the protections sought to be CT Page 5319 afforded by the statute of limitations would be compromised by not dismissing a § 52-592 based action. cf. Skibeck v. Avon,24 Conn. App. 239, 243 (1991). The defendant's interest in statute of limitation policy should have some input into the Ruddock equation and in deciding whether the plaintiffs conduct has been egregious. Based on the foregoing, the court will examine the facts of this case.
This case is a medical malpractice claim against doctor Joseph Zeppieri and Lawrence Memorial Hospital. The first complaint containing three counts was dated September 15, 1992 and according to the return was served on the hospital on September 19, 1995, more than three years after the date of the alleged misconduct. The plaintiff had to obtain a sheriffs return including a sheriffs affidavit to the effect that he had received the process within the limitations period although it was not served until after that date.
The claims against Zeppieri in the first suit were dismissed May 10, 1996, because of the plaintiffs failure to comply with a Request to Revise. For some reason, on February 10, 1997, the plaintiff filed a second suit not only against the hospital, even though the action against the hospital in the first suit was not dismissed by the court. For a time, two suits were pending against the hospital. Then in two separate orders entered on December 12, 1997, as to which notice was given December 19, 1997, the court dismissed the first suit against the hospital and the second suit against both the doctor and the hospital because the court determined the plaintiff failed to prosecute the matters with due diligence, Practice Book § 251.[1]
The plaintiff did not file a motion to reopen either of the first two suits. Instead, pushing the parameters of § 52-592, the plaintiff filed this pending litigation on December 11, 1998, 364 days after the dismissal of the first suits and second, against the hospital and thirty months after the dismissal of the claims against the doctor in the first suit. In this third suit, the plaintiff had to obtain a sheriffs return which included an affidavit wherein the sheriff stated he did not serve the process within the one-year period provided for in § 52-592, but he had received the papers from plaintiffs counsel on December 11, 1998, one day before the expiration of the one-year period.
Defendants, I take it, have rights, too. These type of suits, besides exposing people to large financial judgments, exact an emotional toll. A cursory reading of the complaint indicates or suggests that proof of its allegations will rely on human memory, perhaps verbal communications made to who knows who under circumstances that will have to be recreated. Statutes of limitation CT Page 5320 are passed so that after a certain time, people can go about their lives without the fear of litigation haunting them and so that actions be brought sufficiently close to an occurrence to enable defendants to gather that evidence necessary to defend themselves. This December 1998 suit, the third, was filed some six and one-half years after the incidents that allegedly gave rise to the claim. If the motion were to be denied, trial will not commence for a year to two years. Even if this period were to be calculated from the date this writ was returned to court a wholly unrealistic assumption and unfair to the defendant since, at the very least, this complaint should probably be exposed to a request to revise — but even with that assumption on the day this suit was filed, the plaintiff knew or should have known the actual trial would not occur until 7 1/2 to 8 1/2 years after the incident in question.
Although this court has never taken any pleasure in throwing cases out of court, to not do so here would simply not be fair. Pushing the statute of limitations in the first case, allowing a failure to prosecute dismissal to occur, pushing even the one-year ameliorative statutory limit beyond the prescribed period ignores the defendant's rights in a way that has developed into a pattern, a pattern that should have all along indicated to plaintiffs counsel that those rights were being compromised. Accident and simple negligence which result in a case's dismissal are said to not be sufficient reason to deprive a litigant of resort to an ameliorative statute such as § 52-592. But more than that is involved here. To countenance what occurred here would render statutes of limitations pointless. Accident and simple negligence, at least in part, have to be defined in terms of the effect of the plaintiff lawyer's actions on the rights of the defendant, including those rights reflected in policies behind statutes of limitation. When the effect is great, to the point of being unfair and unreasonably interfering with the right to defend, then conduct causing that effect can be said to be "egregious." In such a case, the client is punished for the actions of the lawyer, but that can be said of the ordinary case where suit simply has not been filed within the limitations period. No one there says let's just not enforce the statute of limitations against the faultless client. The same considerations apply when, as here, delay in bringing suit, dismissals, and the need to bring a § 52-592 action cause such a lengthy period of time to pass that the defendant is prejudiced and statute of limitations policies are ignored. The loss of rights suffered by a plaintiff in such a situation cannot justify unfair prejudice to the defendant. The delay is not the defendant's fault either.
The motion is granted. CT Page 5321
Corradino, J.