## JOSEPH BOCCHINO, JR. *v.* NATIONWIDE MUTUAL FIRE INSURANCE COMPANY (SC 15660)

Borden, Berdon, Norcott, Katz and McDonald, Js.

Argued December 3, 1997—officially released August 18, 1998

*Matthew J. Broder*, for the appellant (plaintiff).

*Gordon R. Raynor*, for the appellee (defendant).

*Opinion*

BORDEN, J. In this action to recover proceeds pursuant to a homeowner's insurance policy, the plaintiff appeals[1] from the judgment of the trial court in favor of the defendant. The trial court determined that the action had not been brought within one year of the date of the loss, as required by the policy, and that the accidental failure of suit statute, General Statutes § 52-592,[2] did not operate to save the plaintiff's action. The plaintiff claims that the trial court improperly concluded that § 52-592 (a) did not save the action. We affirm the judgment of the trial court.

The facts and procedural history are undisputed. The plaintiff, Joseph Bocchino, Jr., owned a dwelling and detached garage in Bridgeport. Through a homeowner's

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023, now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c).

[2] General Statutes § 52-592 provides in relevant part: "(a) If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment. . . ."

insurance policy purchased from the defendant, Nationwide Mutual Fire Insurance Company, the plaintiff insured the property against fire and various other types of loss. One of the provisions of the insurance policy provided that "[n]o action can be brought unless . . . the action is started within one year after the date of loss or damage." This provision of the policy is mandated by General Statutes §§ 38a-308 (a) and 38a-307.[3]

On November 16, 1991, the garage was damaged by fire, and the defendant paid the plaintiff for personal property loss but denied his proof of loss for the structure on the ground that it was "used in part or in whole for commercial business purposes" and, therefore, was not covered by the insurance policy. On November 6, 1992, within one year of the date of the loss, the plaintiff brought an action against the defendant for proceeds allegedly owed him pursuant to the policy. On June 24, 1994, however, that action was dismissed pursuant to Practice Book § 251, now Practice Book (1998 Rev.) § 14-3,[4] for failure to prosecute with due diligence. On

---

[3] General Statutes § 38a-308 (a) provides in relevant part: "No policy or contract of fire insurance shall be made, issued or delivered by any insurer or any agent or representative thereof, on any property in this state, unless it conforms as to all provisions, stipulations, agreements and conditions with the form of policy set forth in section 38a-307. . . . Such policy shall be clearly designated on the back of the form as 'The Standard Fire Insurance Policy of the State of Connecticut' . . . ."

General Statutes § 38a-307, which sets forth the standard policy form, provides in relevant part: "Suit. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity . . . unless commenced within twelve months next after inception of the loss. . . ."

[4] Practice Book § 251, now Practice Book (1998 Rev.) § 14-3, provides: "If a party shall fail to prosecute an action with reasonable diligence, the court may, after hearing, on motion by any party to the action pursuant to Sec. 196, or on its own motion, render a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. Judgment files shall not be drawn except where an appeal is taken or where any party so requests.

"If a case is printed on a dormancy calendar pursuant to the dormancy program administered under the direction of the chief court administrator,

March 30, 1995, within one year of the date of the prior dismissal but beyond one year from the date of the fire loss, the plaintiff brought this action, the substantive claims of which are, for all material purposes, identical to those contained in the plaintiff's first complaint. The plaintiff alleged that the action was timely by virtue of the provisions of § 52-592 (a).

The case was tried to an attorney trial referee, who found the facts and recommended judgment for the plaintiff. The plaintiff moved the trial court for judgment in accordance with the report, and the defendant filed certain exceptions and objections to the referee's report. The trial court found dispositive the defendant's claims that the plaintiff's action was barred by the one year limitation period under the defendant's insurance policy and that, under controlling case law, the provisions of § 52-592 (a) do not operate to save the plaintiff's action. Accordingly, the trial court rendered judgment for the defendant. This appeal followed.

The plaintiff claims that the trial court improperly concluded that § 52-592 (a) did not save this action, because, the plaintiff maintains, the defendant's insurance policy provision requiring that an action be brought within one year of the date of the loss was mandated by the standard fire insurance policy form delineated in §§ 38a-308 (a) and 38a-307, and was, therefore, a "time limited by law" within the meaning of the savings provision of § 52-592 (a). Recognizing that prevailing case law has interpreted § 52-592 (a) as not applying to such provisions, however, the plaintiff urges us to overrule that case law. We decline to do so.

This case is controlled by our prior decisions in *Chichester* v. *New Hampshire Fire Ins. Co.*, 74 Conn.

and a motion for default for failure to plead is filed pursuant to Sec. 128, only those papers which close the pleadings by joining issues, or raise a special defense, may be filed by any party, unless the court otherwise orders."

510, 51 A. 545 (1902), and *Vincent* v. *Mutual Reserve Fund Life Assn.*, 74 Conn. 684, 51 A. 1066 (1902). In short, *Chichester* and *Vincent* held that the accidental failure of suit statute applies only to actions barred by an otherwise applicable *statute of limitations*, and not to an applicable *contractual* limitation period, irrespective of whether that period was required by a statutory form for an insurance policy. *Chichester* v. *New Hampshire Fire Ins. Co.*, supra, 513–14; *Vincent* v. *Mutual Reserve Fund Life Assn.*, 688. Moreover, *Monteiro* v. *American Home Assurance Co.*, 177 Conn. 281, 283, 416 A.2d 1189 (1979), reaffirmed that holding, and, on several occasions since that decision, this court and the Appellate Court have further reaffirmed the limited application of the statute. See, e.g., *Pintavalle* v. *Valkanos*, 216 Conn. 412, 417, 581 A.2d 1050 (1990); *Skibeck* v. *Avon*, 24 Conn. App. 239, 243, 587 A.2d 166, cert. denied, 219 Conn. 912, 593 A.2d 138 (1991); *Marangio* v. *Shop Rite Supermarkets, Inc.*, 11 Conn. App. 156, 160, 525 A.2d 1389, cert. denied, 204 Conn. 809, 528 A.2d 1155 (1987).

In *Chichester*, the plaintiff previously had brought an action on a fire insurance policy within the one year provision of the policy, but that action was nonsuited after the plaintiff had introduced all of his evidence, and his appeal was dismissed. *Chichester* v. *New Hampshire Fire Ins. Co.*, supra, 74 Conn. 511. The plaintiff immediately—well within the one year provision of what is now § 52-592 (a)—commenced another action, and was met with the defense of the one year provision of the policy. Id. The plaintiff replied by relying on the accidental failure of suit statute. Id., 511–12. The trial court sustained the defendant's demurrer to the plaintiff's reply, thus, in effect, validating the defense of the one year policy provision and rejecting the reliance on the accidental failure of suit statute. Id., 512.

This court affirmed the judgment of the trial court, holding that "[t]he provision in the policy sued upon requiring an action to be brought 'within twelve months next after the fire' does not operate as *a statute of limitations*; it is a part of the contract; the rights of the parties flow from the contract, and must be governed by the rules of law applicable to contracts. Such a provision in a contract of insurance is valid and binding upon the parties." (Emphasis added.) Id., 512–13.

This court then specifically addressed, and specifically rejected, the claimed applicability of the accidental failure of suit statute, and the argument that it applied because the fire insurance policy, which contained the one year suit provision, was a standard policy mandated by our then insurance statutes. "The plaintiff's claim that [the accidental failure of suit statute] authorizes the bringing of this suit within one year after his nonsuit in the former action, is without foundation. *That [statute] is an amendment to the statute of limitations and does not affect this contract*." (Emphasis added.) Id., 514. "The plaintiff also insists that Chap. 226 of the Public Acts of 1893, establishing a standard policy of insurance, in some way changes the agreement of the parties to such a policy into *a statute of limitations*. The Act clearly has no effect upon the contracts made in accordance with the form therein provided." (Emphasis added.) Id. Subsequently, this court followed the rule of *Chichester* in *Vincent* v. *Mutual Reserve Fund Life Assn.*, supra, 74 Conn. 686 (allegations that prior dismissed action on life insurance policy had been brought within one year policy provision "are immaterial").

Our decisions in *Chichester* and *Vincent* cannot plausibly be read any way other than as holding that § 52-592 (a) does not apply to save a second action on an insurance policy brought beyond the applicable contractual limitation period but within one year of a timely,

but unsuccessful, prior action on the same loss. Moreover, the decision in *Chichester* unequivocally concludes that the fact that the policy's limitation period was mandated by a statutory standard fire insurance form is irrelevant. These precedents dictate the conclusion that the accidental failure of suit statute simply does not apply to the plaintiff's action in the present case. That statute applies to actions that would be time barred by an otherwise applicable statute of limitations, not to actions that are time barred by a contractual policy provision, irrespective of the fact that the policy provision was required by a statutory policy form.[5]

Furthermore, this reading of *Chichester* was reaffirmed in 1979 when this court decided *Monteiro v. American Home Assurance Co.*, supra, 177 Conn. 281. Although the accidental failure of suit statute was not involved in that case, this court cited *Chichester* for the following propositions: (1) "Since a provision in a fire insurance policy requiring suit to be brought within one year of the loss is a valid contractual obligation, a failure to comply therewith is a defense to an action on the policy unless the provision has been waived or unless there is a valid excuse for nonperformance; *and*

[5] The plaintiff attempts to distinguish *Chichester* on the grounds that, in contrast to the present case: (1) the first action of the plaintiff in *Chichester* had been nonsuited after the plaintiff had presented his evidence; and (2) that action had been nonsuited upon the request of the defendant—as opposed to the court's own motion, pursuant to Practice Book § 251, now Practice Book (1998 Rev.) § 14-3, which led to the nonsuiting in the present case. This attempt to distinguish *Chichester* is unpersuasive, however, because these aspects of the procedural history in the plaintiff's first action were immaterial to this court's conclusion that the accidental failure of suit statute was not applicable. On the contrary, the only aspects of the procedural history of the prior case that entered into the court's analysis were "the fact that [the plaintiff] brought an action upon the policy within twelve months after the fire, [and] that in th[at] action [the plaintiff] was nonsuited for reasons not touching the merits of his cause . . . ." *Chichester v. New Hampshire Fire Ins. Co.*, supra, 74 Conn. 513. These same procedural characteristics are also the only material aspects of the plaintiff's first action in the present case and, therefore, *Chichester* cannot be distinguished from the present case.

*such a condition requiring suit to be brought within one year does not operate as a statute of limitations*"; (emphasis added) id., 283; and (2) "This condition is a part of the contract so that it controls the rights of the parties under the contract and, hence, such rights must be governed by the rules of law applicable to contracts." Id. This court then went on to reject the plaintiff's claim, under contract law, that he was excused from compliance with the one year suit provision by his attorney's disability. Id., 285–87.

Indeed, since *Monteiro*, both this court and the Appellate Court have reaffirmed our understanding that § 52-592 (a) operates to save actions that would be barred by otherwise applicable *statutes of limitations*. In *Pintavalle* v. *Valkanos*, supra, 216 Conn. 417, this court approved the interpretation of § 52-592 (a) by the Appellate Court in *Marangio* v. *Shop Rite Supermarkets, Inc.*, supra, 11 Conn. App. 159–60, and we stated that "[a]lthough § 52-592 is a remedial statute and must be construed liberally . . . it should not be construed so liberally as to render *statutes of limitation* virtually meaningless." (Citations omitted; emphasis added.) See *Skibeck* v. *Avon*, supra, 24 Conn. App. 243 (same); see also *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 150, 160, 464 A.2d 18 (1983) ("[T]he legislature has specifically delineated a number of instances where *the statute of limitations* will be tolled. See General Statutes §§ 52-592 through 52-595." [Emphasis added.]).

Thus, our law has been clear since 1902, when we twice held that the accidental failure of suit statute applies to cases barred by a statute of limitations and does not apply so as to obviate an insured's contractual obligation to commence an action within one year of the loss insured against. Furthermore, the limited application of § 52-592 has been reaffirmed by our appellate courts in 1979, 1983, 1987, 1990 and 1991. Pursuant to that body of law, any excuse for failing to bring an

action within an insurance policy's contractual period of limitation must have its source in contract law, not in § 52-592 (a).

Recognizing that *Chichester* is indistinguishable from the present case, the plaintiff urges us to overrule it. This we decline to do. We generally have adhered to the notion that "[i]n assessing the force of stare decisis . . . we should be especially cautious about overturning a case that concerns statutory construction. . . .

"When we construe a statute, we act not as plenary lawgivers but as surrogates for another policy maker, the legislature. In our role as surrogates, our only responsibility is to determine what the legislature, within constitutional limits, intended to do. Sometimes, when we have made such a determination, the legislature instructs us that we have misconstrued its intentions. We are bound by the instructions so provided. See, e.g., *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania,* 238 Conn. 285, 291, 679 A.2d 925 (1996), and cases cited therein. More often, however, the legislature takes no further action to clarify its intentions. Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute. See, e.g., *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities,* 236 Conn. 681, 693, 674 A.2d 1300 (1996); *Habetz* v. *Condon,* 224 Conn. 231, 239 n.12, 618 A.2d 501 (1992); *Farmers & Mechanics Savings Bank* v. *Garofalo,* 219 Conn. 810, 817, 595 A.2d 341 (1991); *Union Trust Co.* v. *Heggelund,* 219 Conn. 620, 626–27, 594 A.2d 464 (1991); *In re Jessica M.,* 217 Conn. 459, 472, 586 A.2d 597 (1991); *State* v. *Marsala,* 216 Conn. 150, 158, 579 A.2d 58 (1990); *White* v. *Burns,* 213 Conn. 307, 333–34, 567 A.2d 1195 (1990); *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 134, 527 A.2d 672 (1987); *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 439, 525 A.2d 91 (1987).

"In light of our role as surrogates for the legislature, proper respect for the separation of powers has led us to exercise prudence with respect to the overruling of cases that involve the construction of a statute. Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision. If . . . stare decisis is to continue to serve the cause of stability and certainty in the law—a condition indispensable to any well-ordered system of jurisprudence—a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. [W.] Maltbie, [Connecticut Appellate Procedure (1957) § 226]. This is especially true when the precedent involved concerns the interpretation or construction of a statute. . . . A change in the personnel of the court never furnishes reason to reopen a question of statutory interpretation. . . . *Herald Publishing Co.* v. *Bill*, 142 Conn. 53, 62, 111 A.2d 4 (1955); see *Neal* v. *United States*, 516 U.S. 284, 295, 116 S. Ct. 763, 133 L. Ed. 2d 709 (1996); *Patterson* v. *McLean Credit Union*, 491 U.S. 164, 172–73, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989); *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 196, 676 A.2d 831 (1996); *General Electric Employees Federal Credit Union* v. *Zakrzewski*, 235 Conn. 741, 744, 670 A.2d 274 (1996); see generally L. Marshall, ' "Let Congress Do It": The Case for an Absolute Rule of Statutory Stare Decisis,' 88 Mich. L. Rev. 177 (1989) (arguing that separation of powers justifies heightened rule of stare decisis for precedents involving statutory construction)." (Internal quotation marks omitted.) *Conway* v. *Wilton*, 238 Conn. 653, 681–84, 680 A.2d 242 (1996) (*Peters, C. J.,* dissenting).

The present case does not present "the most cogent reasons"; id., 683; to overrule our prior interpretations

of the accidental failure of suit statute, nor does "inescapable logic"; id.; require such a result. There is nothing bizarre or irrational about those interpretations. Compare *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 202, 708 A.2d 1371 (1998) (overruling prior interpretation of General Statutes § 37-9 [3] because it created "bizarre conflict" between civil and criminal provisions of usury law). Moreover, there is no showing that those interpretations were of recent origin and had disregarded persuasive legislative history regarding the statute's purpose. Compare *Conway* v. *Wilton*, supra, 238 Conn. 681 (overruling prior interpretation of General Statutes § 52-557f [3], Recreational Land Use Act, as applied to municipalities). In addition, in the intervening years since *Chichester*, the legislature has twice amended § 52-592 (a) without addressing our long-standing interpretations of it; see Public Acts 1979, No. 79-267; Public Acts 1982, No. 82-160, § 251; raising the presumption of legislative approval of those interpretations. See, e.g., *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 297–98, 695 A.2d 1051 (1997), and cases cited therein.

The most that can be said for the plaintiff's position, therefore, is that in 1902, when *Chichester* was decided, this court plausibly *could* have interpreted the accidental failure of suit statute as saving an action brought beyond the policy's limitation period when a prior action commenced within that period had been nonsuited, and when the provision containing the limitation period was mandated by statute.[6] That is insufficient

---

[6] The plaintiff also cites decisions from the courts of other states that, in applying their states' accidental failure of suit statutes in analogous situations, have concluded that the statute applies to contractual limitations periods. The plaintiff does not claim, however, that those cases constitute a majority trend. Indeed, we note that one prominent insurance law commentator has stated: "Under certain state statutes, it has been held that where the plaintiff suffers a nonsuit, he may bring a new action within one year of such nonsuit, if the original action was timely. . . . *The majority of courts have held that the filing of one suit, which is later dismissed, does*

justification to sweep away the at least equally plausible interpretation that this court *did* adopt, twice, in 1902, and has reaffirmed repeatedly since, and which the legislature presumably has approved.

The judgment is affirmed.

In this opinion NORCOTT and KATZ, Js., concurred.

BERDON, J., with whom MCDONALD, J., joins, dissenting. The majority, in affirming the trial court, brings this court's jurisprudence back to the period of early English common law when the slightest procedural error would result in the dismissal of a plaintiff's complaint and be a bar to obtaining an adjudication on its merits.[1] As a result of the majority's decision today, any person insured under a fire insurance policy who (1) puts the insurer on notice of a claim, (2) files timely proof of loss for the claim, (3) files an action against the insurer within one year of the date of loss, as required by the time limitation provision statutorily mandated to be in the policy, and (4) suffers a nonsuit of his action as a result of an error generated by the trial court's computer more than one year after the date of his loss, is not entitled to bring an identical action pursuant to

---

not toll the time for action upon an insurance policy, and a later suit, filed after the contractual period has expired has been held too late." (Emphasis added.) 20A J. Appleman & J. Appleman, Insurance Law and Practice (1980) § 11618, pp. 490–94, citing *Vincent* v. *Mutual Reserve Fund Life Assn.*, supra, 74 Conn. 686–87, and *Chichester* v. *New Hampshire Fire Ins. Co.*, supra, 74 Conn. 512–13, as Connecticut authority. Moreover, in our view, how other courts may have interpreted their states' accidental failure of suit statutes is immaterial. Those interpretations do not, and cannot, affect the meaning of our statute, which we have articulated consistently and repeatedly for ninety-six years.

[1] The majority's decision today does not surprise me because of this court's three to two decision in *Ruddock* v. *Burrowes*, 243 Conn. 569, 576, 706 A.2d 967 (1998), a case decided this year—in which I was one of two dissenters— wherein the majority held that a disciplinary dismissal as the result of the conduct of a lawyer is not necessarily a "matter of form" that would permit a plaintiff to commence a new action as a matter of right pursuant to General Statutes § 52-592.

the accidental failure of suit statute, General Statutes § 52-592 (a).[2] In reaching that conclusion the majority misreads the 1902 case of *Chichester* v. *New Hampshire Fire Ins. Co.*, 74 Conn. 510, 51 A. 545 (1902) (*Chichester II*), and more troubling, relies on other cases that do not support its holding.

The relevant facts are as follows. On November 6, 1992, within one year of the date of loss,[3] the plaintiff, Joseph Bocchino, Jr., commenced an action against the defendant, Nationwide Mutual Fire Insurance Company, for proceeds allegedly owed the plaintiff pursuant to the fire insurance policy the defendant had issued him. The plaintiff was required to bring the action within one year because, pursuant to General Statutes §§ 38a-308 (a) and 38a-307,[4] his policy had a one year limitation of suit provision.

---

[2] General Statutes § 52-592 (a) provides: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."

[3] The defendant paid to the plaintiff $12,337.59 for personal property loss, but refused to pay for the fire damage to the plaintiff's garage.

[4] General Statutes § 38a-308 (a) provides in relevant part: "No policy or contract of fire insurance shall be made, issued or delivered by any insurer or any agent or representative thereof, on any property in this state, unless it conforms as to all provisions, stipulations, agreements and conditions with the form of policy set forth in section 38a-307. . . ."

General Statutes § 38a-307 provides in relevant part: "The standard form of fire insurance policy of the state of Connecticut, with permission to substitute for the word 'Company' a more accurate descriptive term of the type of insurer, shall be as follows . . .

"Suit. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of

Although the pleadings were closed and the case awaited a trial date, the plaintiff's action was dismissed by the trial court on June 24, 1994, under its dormancy program as a result of a computer generated error.[5] On March 24, 1995, less than one year after his original action had been dismissed, the plaintiff commenced a new action against the defendant pursuant to § 52-592 (a). The substantive claims asserted by the plaintiff were identical to those contained in his original complaint. The attorney trial referee, before whom the case was tried, recommended judgment for the plaintiff in the amount of $28,336.45. The trial court rejected this recommendation and rendered judgment in favor of the defendant on the ground that the plaintiff's claim was barred by the one year time limitation provision for instituting an action on the policy.

I begin my analysis of the effect of § 52-592 (a) on the time limitation provision statutorily mandated to be in all fire insurance policies by reviewing the history underlying savings statutes. Our statute, originally enacted by chapter XIV of the 1862 Public Acts,[6] has,

this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss. . . ."

[5] The record reveals that the plaintiff's claim for civil trial list, in which his attorney, pursuant to the dormancy program, certified that all the pleadings had been closed as to all the parties, was filed in the clerk's office before the trial court dismissed the action.

[6] Public Acts 1862, c. XIV, provides in relevant part: "That if, in any action duly commenced within the time limited by law, and which may now be pending or hereafter brought, the writ fails of a sufficient service or return, by any unavoidable accident, or by any default or neglect of the officer to whom it is committed, or if the writ is abated, or the action otherwise avoided or defeated, by the death of any party thereto, or for any matter of form, or if, after a verdict for the plaintiff, the judgment is arrested, or if a judgment for the plaintiff is reversed on a motion in error, or writ of error, or where the plaintiff shall have mistaken his form of action and the suit shall fail for that cause, the plaintiff may commence a new action for the same cause at any time within one year after the abatement, or other determination of the original suit, or after the reversal of the judgment; and if the cause of action by law survives, his executor or administrator may commence such new action within said one year. . . ."

like other savings statutes, "its roots in the distant past
. . . [of] the English Limitation Act of 1623[7] (21 Jac. 1,
c. 16, § 4) . . . ." *Gaines* v. *New York*, 215 N.Y. 533,
537, 109 N.E. 594 (1915). I agree with Justice Cardozo's
conclusion in *Gaines*, that "whatever verbal differences
exist [between our savings statute and the English Limi-
tation Act of 1623] the purpose and scope of [our savings
statute is] identical in substance with its prototype, the
English [Limitation] [A]ct of 1623." Id., 539. Section 52-
592 (a), like the New York savings statute and the
English Limitation Act of 1623, was "designed to insure
to the diligent suitor the right to a hearing in court till
he reaches a judgment on the merits." Id.; see, e.g.,
*Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 733, 557
A.2d 116 (1989); *Ross Realty Corp.* v. *Surkis*, 163 Conn.
388, 393, 311 A.2d 74 (1972); *Baker* v. *Baningoso*, 134
Conn. 382, 387, 58 A.2d 5 (1948); *Johnson* v. *Wheeler*,
108 Conn. 484, 486, 143 A. 898 (1928); *Johnston* v. *Sikes*,
56 Conn. 589, 596 (Superior Court 1888).

Indeed, this precise point was made in the concurring
opinion in *Andrew Ansaldi Co.* v. *Planning & Zoning
Commission*, 207 Conn. 67, 70, 540 A.2d 59 (1988)
(*Shea, J.,* concurring). Justice Shea wrote: "Centuries
ago the common law courts of England . . . insisted
upon rigid adherence to the prescribed forms of action,
resulting in the defeat of many suits for technical faults
rather than upon their merits. Some of that ancient

---

[7] The English Limitation Act of 1623 provided: " '[I]f in any the said actions
or suits, judgment be given for the plaintiff, and the same be reversed by
error, or a verdict pass for the plaintiff, and upon matter alleged in arrest
of judgment, the judgment be given against the plaintiff, that he take nothing
by his plaint, writ or bill; or if any of the said actions shall be brought by
original, and the defendant therein be outlawed, and shall after reverse the
outlawry; that in all such cases the party plaintiff, his heirs, executors or
administrators, as the case shall require, may commence a new action or
suit, from time to time, within a year after such judgment reversed, or such
given against the plaintiff, or outlawry reversed, and not after.' " *Gaines* v.
*New York*, 215 N.Y. 533, 537, 109 N.E. 594 (1915).

jurisprudence migrated to this country with the settlers and has affected the development of procedural law in this state. Beginning in the middle of the nineteenth century, however, our legislature enacted numerous procedural reforms applicable to ordinary civil actions that are designed to ameliorate the consequences of many deviations from the prescribed norm, which result largely from the fallibility of the legal profession, *in order generally to provide errant parties with an opportunity for cases to be resolved on their merits rather than dismissed for some technical flaw.*" (Emphasis added.) Id., 75–76.

Justice Shea's interpretation of § 52-592 (a) is in accord with this court's long-standing and principled view that "the policy of [our] law [is] to bring about a trial on the merits of a dispute whenever possible . . . ." *Snow* v. *Calise,* 174 Conn. 567, 574, 392 A.2d 440 (1978); see also *Lechner* v. *Holmberg,* 165 Conn. 152, 156, 328 A.2d 701 (1973) (" '[d]ue process of law requires that the rights of no [person] shall be judicially determined without affording him a day in court and an opportunity to be heard' "); *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 526, 290 A.2d 327 (1971) (same); *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 383, 260 A.2d 596 (1969) (same); *Benz* v. *Walker,* 154 Conn. 74, 77, 221 A.2d 841 (1966) (same).

Most recently, this court reaffirmed this principle when it addressed whether General Statutes § 52-72 allows an amendment to correct a return date. *Coppola* v. *Coppola,* 243 Conn. 657, 707 A.2d 281 (1998). Justice Norcott, writing for a unanimous court, stated that our conclusion that a party could file an amendment to correct a return date "is consistent with our expressed policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Internal quotation marks

omitted.) Id., 665. Justice Norcott went on to explain that "[o]ur practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. . . . We [refuse] to permit the recurrence of the inequities inherent in eighteenth century common law that denied a plaintiff's cause of action if the pleadings were technically imperfect." (Citation omitted; internal quotation marks omitted.) Id., 665–66.

Finally, this court consistently has held, like Justice Cardozo concluded in *Gaines*, that our savings statute's "broad and liberal purpose is not to be frittered away by any narrow construction." *Gaines* v. *New York*, supra, 215 N.Y. 539; see, e.g., *Isaac* v. *Mount Sinai Hospital*, supra, 210 Conn. 733 ("[w]e . . . decline to 'fritter away' the strong remedial purpose of our saving statute"); *Ross Realty Corp.* v. *Surkis*, supra, 163 Conn. 393 (very liberal construction given to savings statute); *Baker* v. *Baningoso*, supra, 134 Conn. 387 (same); *Johnson* v. *Wheeler*, supra, 108 Conn. 488 (same); *Johnston* v. *Sikes*, supra, 56 Conn. 596 (same).

With this background in mind, I focus on the language of § 52-592 (a) to determine whether the plaintiff's case falls within the letter of the savings statute. Section 52-592 (a) provides that, if a plaintiff's "action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . ." Clearly, the plaintiff's original action failed to be tried on its merits. Moreover, there is no dispute that the plaintiff filed an identical action within one year of the dismissal of his first action. Consequently, the only real issue for this court to address in this appeal is whether the one year limitation

of suit provision in the plaintiff's fire insurance policy is "time limited by law" under § 52-592 (a).

I conclude that, although the one year period by which the plaintiff was required to institute his action was a provision in the insurance contract, it was still a limitation period required by law. General Statutes § 38a-307 provides in relevant part that the standard form of fire insurance policy shall include the contractual provision that any action be "commenced within twelve months next after inception of the loss" and General Statutes § 38a-308 (a) mandates that all policies of fire insurance "made, issued or delivered by any insurer or any agent or representative thereof, on any property in this state . . . [conform] . . . to all provisions, stipulations, agreements and conditions" set forth in the standard policy of § 38a-307. Moreover, this court has made clear that the provisions of the standard fire insurance policy are required by law. See *Hanover Ins. Co.* v. *Firemen's Fund Ins. Co.*, 217 Conn. 340, 344–47, 586 A.2d 567 (1991) (even if insurance policy does not contain limitation of suit clause, insured still subject to one year limitation); *State* v. *Biller*, 190 Conn. 594, 613, 462 A.2d 987 (1983) (oath on proof of loss form required by statutory predecessor of §§ 38a-308 (a) and § 38a-307 "is one required by law" as necessary to sustain conviction pursuant to General Statutes § 53-368 for falsely certifying administration of oath); *Covenant Ins. Co.* v. *Banks*, 177 Conn. 273, 277, 413 A.2d 862 (1979) (appraisal clause legislatively mandated by statutory predecessor of §§ 38a-308 and 38a-307 to appear in fire insurance policy). Accordingly, the one year limitation of suit provision is a statutory limitation period and is "time limited by law" pursuant to § 52-592 (a).

Furthermore, in a majority of jurisdictions "that have adopted a standard form of insurance policy by statute, as [Connecticut] has, it has been held that these or

other remedial statutes designed to prevent technical forfeitures under statutes of limitation also apply to the limitation period *incorporated by statute into every insurance policy.*" (Emphasis added.) *Bollinger* v. *National Fire Ins. Co. of Hartford, Connecticut*, 25 Cal. 2d 399, 408, 154 P.2d 399 (1944); see, e.g., *Abele* v. *A. L. Dougherty Overseas, Inc.*, 192 F. Sup. 955, 956–57 (N.D. Ind. 1961); *Lancashire Ins. Co.* v. *Stanley*, 70 Ark. 1, 3, 62 S.W. 66 (1901); *Hoagland* v. *Railway Express Agency, Inc.*, 75 So. 2d 822, 828 (Fla. 1954); *Roth* v. *Northern Assurance Co. Ltd.*, 32 Ill. 2d 40, 48, 203 N.E.2d 415 (1964); *Tracy* v. *Queen City Fire Ins. Co.*, 132 La. 610, 613–14, 61 So. 687 (1913); *Hamilton* v. *Royal Ins. Co.*, 156 N.Y. 327, 336, 50 N.E. 863 (1898); *Buchholz* v. *United States Fire Ins. Co.*, 183 Misc. 826, 828, 51 N.Y.S.2d 923 (1944), aff'd, 269 App. Div. 49, 53 N.Y.S.2d 608, appeal denied, 269 App. Div. 737, 54 N.Y.S.2d 701, appeal dismissed, 294 N.Y. 807, 62 N.E.2d 239 (1945); *Carolina Transportation & Distributing Co.* v. *American Alliance Ins. Co.*, 214 N.C. 596, 598, 200 S.E. 411 (1939); *Greulich* v. *Monnin*, 142 Ohio St. 113, 116, 50 N.E.2d 310 (1943); *George* v. *Connecticut Fire Ins. Co.*, 84 Okla. 172, 174, 201 P. 510 (1921); *Hatley* v. *Truck Ins. Exchange*, 261 Or. 606, 614, 494 P.2d 426 (1972); annot., 23 A.L.R. 97, 106–109 (1923). In each case, the courts have concluded that because the contractual limitation of suit provision is in effect a statutory limitation period, an insured's right to bring an action on the policy is limited by law, and, therefore, is subject to the savings statute. Although the savings statutes from the majority of these jurisdictions contain slightly different language than § 52-592 (a),[8] I am persuaded that the

---

[8] The savings statutes in California, North Carolina and Oregon, for example, begin with the phrase: "If an action is commenced within *the time prescribed therefor . . . .*" (Emphasis added.) *Bollinger* v. *National Fire Ins. Co. of Hartford, Connecticut*, supra, 25 Cal. 2d 409; *Carolina Transportation & Distributing Co.* v. *American Alliance Ins. Co.*, supra, 214 N.C. 598; *Hatley* v. *Truck Ins. Exchange*, supra, 261 Or. 613–14. Section 52-592

reasoning of those cases applies to our interpretation of § 52-592 (a).

The majority concludes, however, that the limitation of suit provision is not "time limited by law." According to the majority, it is compelled to reach this conclusion, thus denying the plaintiff a chance to have his case heard on its merits, because this court held in 1902 that § 38a-308's predecessor was not "an otherwise applicable statute of limitations," and because, in 1979, this court quoted the 1902 ruling at length in a case that was only tangentially related to the 1902 ruling. See *Chichester II*, supra, 74 Conn. 514; *Monteiro* v. *American Home Assurance Co.*, 177 Conn. 281, 283, 416 A.2d 1189 (1979).

After reviewing *Chichester II* and *Monteiro*, I conclude that both cases are inapposite to the present case because, unlike the plaintiff in this case, the plaintiffs in *Chichester II* and *Monteiro* failed to meet the prerequisites of § 52-592 (a) for commencing a new action on the same cause. To understand *Chichester II*, we must review *Chichester* v. *New Hampshire Fire Ins. Co.*, 72 Conn. 707, 46 A. 151 (1900) (*Chichester I*). In *Chichester I*, the plaintiff had brought an action within one year of his date of loss, which was nonsuited after he had introduced all of his evidence at trial on that action. The trial court granted the defendant's motion for nonsuit because the plaintiff failed to make out a prima facie case as a result of his failure to prove "immediate notice" to the defendant after the fire, which, in addition to a contractual limitation period of one year for instituting an action, was a condition of the policy of insurance and an essential element of his case. *Chichester* v. *New Hampshire Fire Ins. Co.*, 6 Conn. Supreme Court Records & Briefs, April Term, 1900, Record p. 15. The

---

(a) begins with the phrase: "If any action, commenced within the time *limited by law*, has failed . . . ." (Emphasis added.)

plaintiff then attempted in *Chichester II* to bring a second action against the defendant pursuant to chapter CXCIII of the 1895 Public Acts (currently codified at § 52-592 [a]), which this court held was barred as not falling within the provisions of the savings statute. *Chichester II*, supra, 74 Conn. 514. In other words, the plaintiff's original action in *Chichester I*, unlike the plaintiff's original action in the present case, was tried on its merits and did not fall within the letter of § 52-592 (a).

The plaintiff in *Monteiro*, unlike the plaintiff in this case, commenced his action against the defendant more than one year after he had suffered his loss, thus failing to comply with his insurance policy's one year limitation of suit provision.[9] *Monteiro* v. *American Home Assurance Co.*, supra, 177 Conn. 283. Consequently, the *Monteiro* court did not even address whether § 52-592 (a) extended the one year limitation period in the plaintiff's policy. Instead, the court determined whether the plaintiff was excused from performance of the contractual condition by virtue of his attorney's tragic illness. Id., 285–86. The principal issue in the present case, therefore, whether § 52-592 (a) extends a contractual limitation period when that limitation period is required by law, has never been squarely decided by this court.[10]

---

[9] The plaintiff in *Vincent* v. *Mutual Reserve Fund Assn.*, 74 Conn. 684, 51 A. 1066 (1902), which the majority mistakenly argues affirmed the holding in *Chichester II*, also commenced his action more than one year after he had suffered his loss. Moreover, the *Vincent* plaintiff, like the plaintiff in *Monteiro*, did not invoke the accidental failure of suit statute to preserve the untimely filed action.

[10] All the other cases the majority cites for support of its statement that the proposition of law set forth in *Chichester II* has been reaffirmed by our appellate courts over the last twenty years are either inapposite or irrelevant to the present case.

In *Pintavalle* v. *Valkanos*, 216 Conn. 412, 418–19, 581 A.2d 1050 (1990), this court held that § 52-592 (a) did not save a third action brought on the same cause because it had not been brought within one year of the dismissal of the first suit. The plaintiff's action in the present case was brought less than one year after his first action was dismissed. *Marangio* v. *Shop Rite*

Even if the majority were correct that *Chichester II* holds what the majority claims it does, which it does not, I would overrule it.[11] "The value of adhering to precedent is not an end in and of itself . . . if the precedent reflects substantive injustice. Consistency must also serve a justice related end. B. Cardozo, The Nature of the Judicial Process (1921) p. 150 (favoring rejection

---

*Supermarkets, Inc.*, 11 Conn. App. 156, 160–61, 525 A.2d 1389, cert. denied, 204 Conn. 809, 528 A.2d 1155 (1987), is not relevant for the same reason as *Pintavalle*.

Moreover, in *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 150, 464 A.2d 18 (1983), the plaintiffs did not even invoke § 52-592 (a) to toll the time when their action had to be filed. Instead, the plaintiffs argued that the six year limitation on contract actions was tolled because one of the defendants had a continuing duty to repair, which extended the time. Id., 157. Finally, in *Skibeck* v. *Avon*, 24 Conn. 239, 243, 587 A.2d 166, cert. denied, 219 Conn. 912, 593 A.2d 138 (1991), the plaintiff's action was not saved by § 52-592 (a) because " 'the egregious conduct of the plaintiff's case was never intended to be saved by [its] provisions,' " not because the limitation was not a limitation of law.

[11] Indeed, we did just that in *Erickson* v. *Erickson*, 246 Conn. 359, 372, 716 A.2d 92 (1998), a decision rendered this term, wherein Justice Borden, writing for a unanimous court that included Justice Katz, overruled a rule of law that had been reaffirmed in *Connecticut Junior Republic* v. *Sharon Hospital*, 188 Conn. 1, 448 A.2d 190 (1982). "[P]rinciples of law which serve one generation well may, by reason of changing conditions, disserve a later one. . . . Experience can and often does demonstrate that a rule, once believed sound, needs modification to serve justice better." (Internal quotation marks omitted.) *Erickson* v. *Erickson*, supra, 372. In overruling prior case law interpreting a nineteenth century statute, we previously had occasion to quote Justice Oliver Wendell Holmes: " 'It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.' O. Holmes, 'The Path of the Law,' 10 Harv. L. Rev. 457, 469 (1897)." *Brunswick* v. *Inland Wetlands Commission*, 222 Conn. 541, 554–55, 610 A.2d 1260 (1992). I can only conclude that, based upon *Erickson*, wherein two members of the majority in this case had no difficulty in overruling a 1982 decision that no longer served justice, the persistence of those two justices in following the 1902 case of *Chichester II* (as they interpret *Chichester II*) is not based solely on precedent. Rather, I must conclude that those justices believe that § 52-592 (a) should not save a cause of action that was timely filed within the contractual limitation period required by law but was dismissed after the expiration of the one year period as a result of a court computer error.

of precedent when it has been found to be inconsistent with the sense of justice or with the social welfare). . . . [F]ar from being immune from considerations of justice, [the rule of stare decisis] must always be tested against the ends of justice more generally. C. Peters, ['Foolish Consistency: On Equality, Integrity, and Justice in Stare Decisis,' 105 Yale L.J. 2031, 2047 (1996)]. . . . If law is to have a current relevance, courts must have and exert the capacity to change a rule of law when reason so requires. . . . *In re Stranger Creek & Tributaries in Stevens County*, 77 Wash. 2d 649, 653, 466 P.2d 508 (1970). . . . Those doctrines only will eventually stand which bear the strictest examination and the test of experience. *Barden* v. *Northern Pacific R. Co.*, 154 U.S. 288, 322, 14 S. Ct. 1030, 38 L. Ed. 992 (1894)." (Citations omitted; internal quotation marks omitted.) *Conway* v. *Wilton*, 238 Conn. 653, 659–60, 680 A.2d 242 (1996).

Reason requires this court to overrule *Chichester II* because that court's construction of the interplay between § 38a-308 and § 52-592 (a) contravenes our long-standing liberal interpretation of the accidental failure of suit statute, and its long-standing policy of providing "errant parties with an opportunity for cases to be resolved on their merits rather than dismissed for some technical flaw." *Andrew Ansaldi Co.* v. *Planning & Zoning Commission*, supra, 207 Conn. 75–76 (*Shea, J.*, concurring). "It is the courts, the legal profession and the public generally, not just the plaintiffs, who are the losers when serious cases . . . fail to be resolved on their merits because of some procedural deficiency. . . . Where the procedural deficiency claimed to make such a result unavoidable follows from a construction of a statute not required by its language, wholly inconsistent with its legislative history, and unheralded by applicable precedent, the frustration of the principal objective of our judicial system, to resolve

controversies on their merits, arises from a mere exaltation of form over substance."[12] (Citation omitted; internal quotation marks omitted.) *Simko* v. *Zoning Board of Appeals*, 206 Conn. 374, 391, 538 A.2d 202 (1988) (*Shea, J.*, dissenting).

Furthermore, *Chichester II* should be overruled because adherence to it will lead to unjust results for all insured parties who, like the plaintiff (1) put their insurers on notice of claims, (2) file timely proof of loss for the claims, (3) file actions against the insurer within one year of the date of loss, and (4) suffer nonsuits through no fault of their own. Simply put, it is manifestly unjust to forbid such persons from prosecuting new actions if the prosecution of the original action fulfilled the essential purpose of the policy's limitation of suit provision. The essential purpose of the fire insurance policy's limitation of suit provision is to "prevent delay in the determination of all questions of loss, and in part to enable the company to know in season whether a claim will be prosecuted." *Woodbury Savings Bank & Building Assn.* v. *Charter Oak Fire & Marine Ins. Co.*, 31 Conn. 517, 529 (1863). By invoking judicial aid less than one year after his date of loss, the plaintiff in the present case gave timely notice to the defendant that a claim would be prosecuted. Moreover, the defendant knew that the plaintiff's original action was dismissed merely because of a computer generated error. Under such circumstances, it defies justice for the majority to refuse to reverse *Chichester II*. See *New York Central & Hudson River R. Co.* v. *Kinney*, 260 U.S. 340, 346, 43 S. Ct. 122, 67 L. Ed. 294 (1922) ("when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of

---

[12] Likewise, the majority's decision today exalts form over substance. See *Gaines* v. *New York*, supra, 215 N.Y. 539 ("[i]f the protection of the statute is to be denied to [the plaintiff], it ought to be clearly shown that his case, though within the letter of the statute, is not within its reason").

specified conduct . . . a liberal rule should be applied"); *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 417, 538 A.2d 219 (1988) (where enforcement of contractual provision in insurance policy will operate as forfeiture of insured's right without regard to his dutiful behavior, and insurer's legitimate purpose in requiring prompt notification can be protected without forfeiture, "strict enforcement [of the contractual provision] is unwarranted"); *Woodbury Savings Bank & Building Assn.* v. *Charter Oak Fire & Marine Ins. Co.*, supra, 529–30 ("manifestly unjust to allow" insurer to prevail in objection to insured's failure to bring action within time allowed by contract when object of time limitation has been answered).

I would hold, therefore, that the remedial provisions of § 52-592 (a) apply to toll the running of the parties' statutorily required contractual limitation period, and that the plaintiff's second action is not barred in this case.

Accordingly, I dissent.