PEABODY N.E., INC., ET AL. *v.* DEPARTMENT
OF TRANSPORTATION
(SC 16072)

Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued April 22—officially released August 10, 1999

*Donald R. Cassling*, pro hac vice, with whom were *Lawrence H. Dickson* and *James J. Myers*, pro hac vice, for the appellants (plaintiffs).

*Lawrence Russ*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

KATZ, J. General Statutes § 52-592 (a),[1] which is part of our state's "saving statute," allows a plaintiff to bring

---

[1] General Statutes § 52-592 provides in relevant part: "(a) If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment

an action that otherwise would be barred by an applicable statute of limitations, within one year after the determination of a prior action or after the reversal of a judgment, if the "original action" has failed to be tried on the merits for any of several reasons enumerated in the statute, and if the original action was for the same cause as the later action. Although the parties to this appeal raise several issues, the dispositive issue is whether the plaintiff, who has brought two separate actions within the applicable statute of limitations period, may bring a third action, under § 52-592 (a), when: (1) the third action is brought after the applicable

of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment.

"(b) When any action has been brought against an executor or administrator or continued against an executor or administrator after the death of the defendant and has failed for any of the causes listed in subsection (a) of this section, the plaintiff, or his executor or administrator in case a cause of action survives, may commence a new action within six months after the determination of the original action.

"(c) If an appeal is had from any such judgment to the Supreme Court or Appellate Court, the time the case is pending upon appeal shall be excluded in computing the time as above limited.

"(d) The provisions of this section shall apply to any defendant who files a cross complaint in any action, and to any action between the same parties or the legal representatives of either of them for the same cause of action or subject of action brought to any court in this state, either before dismissal of the original action and its affirmance or within one year after the dismissal and affirmance, and to any action brought to the United States circuit or district court for the district of Connecticut which has been dismissed without trial upon its merits or because of lack of jurisdiction in such court. If such action is within the jurisdiction of any state court, the time for bringing the action to the state court shall commence from the date of dismissal in the United States court, or, if an appeal or writ of error has been taken from the dismissal, from the final determination of the appeal or writ of error. . . ."

Section 52-592 was amended by Public Acts 1998, No. 98-20, §§ 1 and 2, which added subsection (e). The remainder of the statute remained unchanged. In the interest of clarity, references herein are to the current revision.

statute of limitations period has expired; (2) the third action is brought within one year of the determination of the last action filed within the applicable limitations period; and (3) the third action is *not* brought within one year of the determination of the first action filed within the applicable limitations period. We conclude that such an action is, as a matter of law, time barred.

I

THE BACKGROUND FACTS AND
PROCEDURAL HISTORY

The following facts, which reasonably could have been found by the trial court, and the following procedural history, are relevant to this appeal. On November 30, 1983, the plaintiffs, Peabody, N.E., Inc., and Peabody International Corporation (collectively, Peabody), entered into a contract with the defendant, the department of transportation (state), for the reconstruction of Route 8 and the Commodore Hull Bridge over the Housatonic River from Shelton to Derby (project). In turn, on February 8, 1984, Peabody, as general contractor, entered into a subcontract with Standard Structural Steel Company (Standard), primarily for the project's structural steel work, in the amount of $8,765,000. The project was originally scheduled to be completed by January 21, 1987, or 1104 days after the project's commencement. During the project, however, as a result of various factors which, according to the trial court, were caused by the state—for instance, changes in the bridge's design—Standard's contractual obligations were severely altered. Consequently, the length of the contract extended to 2562 days and Standard's subcontract price increased to $11,968,612.05. A certificate of acceptance of the project was finally issued on September 23, 1991.

Prior to the completion of the project, on or about August 31, 1990, Standard submitted to Peabody a two

volume written claim, with an accompanying six page summary, for additional compensation for extra work and expenses caused by the design changes. The total amount of this claim was $15,104,244.71. Peabody notified the state of Standard's claim and forwarded two copies of Standard's two volume claim to the state's director of construction for the bureau of highways.

Negotiations took place between the state and Peabody, and between Peabody and Standard, to determine the cause and legitimacy of Standard's extra costs. Eventually, on June 20, 1991, the state and Peabody reached a partial settlement which provided, inter alia, that the state would pay to Peabody $886,424, which Peabody would, in turn, pay to Standard.

On July, 2, 1991, Standard filed an action against Peabody in the United States District Court for the District of Connecticut (federal action). See *Standard Structural Steel Co.* v. *Peabody N.E., Inc.*, Docket No. 2-91-CV-586. On July 29, 1991, Peabody filed an answer and third party complaint. By way of the third party complaint, Peabody sought to implead the state as a third party defendant, essentially denying liability to Standard and alleging that, "[t]o the extent that [Peabody is] found responsible to Standard for all or part of the claims set forth in the [complaint]," the state is liable to Peabody.

The state moved for a dismissal of Peabody's third party action on the ground that the federal district court lacked jurisdiction over the action because the action was barred by the eleventh amendment to the United States constitution.[2] On June 12, 1992, the District Court

---

[2] The eleventh amendment to the United States constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

granted the motion to dismiss, concluding that the court lacked jurisdiction over the action because, although General Statutes (Rev. to 1991) § 4-61 (a)[3] constitutes an abrogation of eleventh amendment immunity for purposes of suit in *state* court, it does not do so for purposes of suit in *federal* court.

Standard, which had become insolvent during the pendency of its federal action, was placed into bankruptcy and, eventually, the Federal Deposit Insurance Corporation (FDIC) became its successor in interest as to any claims pertaining to the project. On May 20, 1993, the FDIC filed an action against Peabody in state court, based upon essentially the same allegations that Standard had asserted in its federal action. See *Federal Deposit Ins. Corp.* v. *Peabody N.E., Inc.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV93-525754-S (January 22, 1996).

On June 2, 1993, Peabody filed an answer and third party complaint, impleading the state into the state action and marking the commencement of Peabody's

[3] General Statutes (Rev. to 1991) § 4-61 (a) provides: "Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract, bring an action against the state to the superior court for the judicial district of Hartford-New Britain for the purpose of having such claims determined, provided notice of the general nature of such claims shall have been given in writing to the department administering the contract not later than two years after the acceptance of the work by the agency head evidenced by a certificate of acceptance issued to the contractor. No action shall be brought under this subsection later than three years from the date of such acceptance of the work by the agency head as so evidenced. Acceptance of an amount offered as final payment shall not preclude any person, firm or corporation from bringing a claim under this section. Such action shall be tried to the court without a jury. All legal defenses except governmental immunity shall be reserved to the state. Any action brought under this section shall be privileged in respect to assignment for trial upon motion of either party."

state action (first state action). Peabody's third party complaint is virtually identical to its analogous complaint in the federal action, with the addition of a paragraph providing: "To the extent [Standard/FDIC] incurred the damages and expenses as alleged, such damages and expenses were caused by acts and/or omissions of the State of Connecticut and not by any acts and/or omissions of Peabody." Again, Peabody alleged that the state is liable to Peabody "[t]o the extent that [Peabody is] found responsible to Standard . . . ."

On January 13, 1995, the state filed a motion to dismiss on the grounds that: (1) Peabody had not given to the state sufficient notice of a claim of the kind or in the manner required under § 4-61; and (2) Peabody's complaint did not allege facts sufficient to make out a disputed claim under Peabody's contract with the state because the claims asserted by Peabody were actually those of Standard. On January 22, 1996, the trial court denied the state's motion, holding, inter alia, that the court did have jurisdiction over the action under § 4-61.[4]

The state appealed from the trial court's judgment to this court upon the granting of certification by the Chief Justice pursuant to General Statutes § 52-265a,[5] as to the following issue: "Whether sovereign immunity bars, and deprives the court of subject matter jurisdiction over, a general contractor's construction claim under . . . § 4-61, when that claim's purpose is to pass

[4] Specifically, the trial court, considering both the state's motion to dismiss and Peabody's motion to amend its complaint, concluded first, that Peabody could indeed amend its complaint and, second, that the state's notice argument did not rise to the level of a subject matter jurisdictional defect.

[5] Section 52-265a authorizes the Chief Justice of this court to certify an appeal from an order or decision of the Superior Court, filed within two weeks of the order or decision, and to call a special session of this court for an immediate hearing upon the appeal, if he or she determines that the issue involves "a substantial public interest . . . and that delay [in determining the issue] may work a substantial injustice . . . ." General Statutes § 52-265a (c).

through to the State the general contractor's potential liability to a subcontractor, even though: (a) the general contractor has denied any liability to the subcontractor, (b) no such liability has been proven, and (c) the subcontractor has no contractual privity with the State?"

We answered this certified question in *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 103, 680 A.2d 1321 (1996), in which we held that the allegations contained in Peabody's third party complaint were, on their face, insufficient to allege a waiver of the state's sovereign immunity, because they failed to allege that Peabody itself had a disputed claim under its contract with the state as required by § 4-61. We concluded that "a contractor cannot implead the state in an action against the contractor by a subcontractor unless the contractor admits liability to the subcontractor and incorporates the subcontractor's claim into its own, so that the contractor then has a disputed claim under its own direct contract with the state." Id., 105. Accordingly, we reversed the judgment of the trial court and remanded the case with direction to grant the state's motion to dismiss the third party complaint and to render judgment thereon. Id. On November 11, 1996, on remand, the trial court dismissed Peabody's first state action.

In July, 1996, Peabody agreed to settle Standard's claim, paying $3.1 million to FDIC. Subsequently, on August 12, 1997, Peabody filed an action against the state in state court (present action). See *Peabody, N.E., Inc.* v. *Dept. of Transportation*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. CV 970482290S (May 1, 1998) (22 Conn. L. Rptr. 90). Although this action was brought almost three years after the expiration of the three year statute of

limitations provided under § 4-61,[6] Peabody brought this action pursuant to § 52-592 (a). According to Peabody, because the first state action was finally dismissed on November 11, 1996, Peabody may bring the present action because it filed its complaint on July 30, 1997, which was within one year of the dismissal.

On September 12, 1997, the state once again filed a motion to dismiss, arguing that, inter alia, "far more than one year [had] passed since 'the original action' . . . filed by Peabody based on those claims [federal action] was dismissed by the United States District Court for lack of jurisdiction . . . ."[7]

---

[6] General Statutes (Rev. to 1991) § 4-61 (a) provides a statute of limitations for actions brought pursuant to that section that ends "three years from the date of such acceptance of the work by the agency head as so evidenced." See footnote 3 of this opinion for the complete text of § 4-61 (a). Because the certificate of acceptance was issued on September 23, 1991, the applicable statutory limitations period ended on September 22, 1994.

[7] The state's other reasons for seeking dismissal, as set forth in its motion, are as follows:

"(1) The Current Action was not filed within the statutory limitations period for construction claim actions against the State under . . . § 4-61 (a).

"(2) The Current Action is not one which may be brought under . . . § 52-592, popularly known as 'the saving statute' or 'the accidental failure of suit statute,' because

"(a) the action set forth in [Peabody's] Complaint . . . is not 'for the same cause' (§ 52-592) as the action previously brought by Peabody against the State in [Superior Court] relating, for the most part, to certain claims of Peabody's subcontractor, The Standard Structural Steel Company . . . .

"(c) Peabody's prior Superior Court action against the State based on those claims did not fail due to a matter of form, or to simple negligence or accident, but rather because an essential element for a claim under § 4-61 was not alleged in Peabody's complaint, and did not then exist; therefore, the primary defect in those actions was not a kind which the saving statute was intended to remedy; and

"(d) Peabody's Current Complaint does not allege facts sufficient to show that either its Federal Action or its prior Superior Court action was filed within the applicable limitations period of § 4-61.

"(3) In addition, even the Current Complaint does not satisfy the requirements of § 4-61, which, since it is a statute in derogation of sovereign immunity, must be strictly construed and applied. . . . [Peabody] has failed to allege facts sufficient to show either (i) what the applicable limitations period was, or (ii) that the required notice was given within that applicable

On May 1, 1998, the trial court issued a memorandum of decision dismissing Peabody's claim on the ground that Peabody had "failed to comply with the notice provision of § 4-61 (a)." The court stated that "[n]one of the . . . documents submitted by Peabody demonstrate that it provided written notice of its intention to file the present action, and the factual bases for same, to the agency head of the [state]." Because this failure deprived it of subject matter jurisdiction, the trial court did not address the other grounds for dismissal relied upon by the state, including the state's argument that § 52-592 (a) does not operate to save the present action. Peabody appealed from the trial court's judgment and, pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c), we transferred the appeal to this court.

On appeal, Peabody claims that: (1) the trial court's interpretation of § 4-61 was, for various reasons, improper;[8] (2) under the proper interpretation of § 4-61, the trial court improperly dismissed Peabody's action on the ground that Peabody had failed to provide adequate notice both of its intent to file the present action based on Standard's claims and the factual bases for such claims; and (3) the trial court improperly concluded that a motion to dismiss is an appropriate vehicle by which to determine the sufficiency of the allegations regarding notice contained in Peabody's complaint.

The state claims that the dismissal of Peabody's action should be affirmed because: (1) the action was not brought within the applicable limitations period

period. Furthermore, an essential element of Peabody's claim (i.e., its assumption of some liability for Standard's claims) did not even exist until long after the limitations period for the giving of such notice had expired."

[8] Specifically, Peabody claims that the trial court's interpretation was improper in that it: (1) is contradicted by the plain language of the statute; (2) is contradicted by certain admissions allegedly made by the department; (3) is contradicted by the parties' course of conduct under their contract for the project; and (4) would render § 4-61 unconstitutional.

provided in § 4-61, which ended on September 22, 1994, three years after the issuance of the certificate of acceptance of the project; (2) Peabody's pleadings do not allege the facts necessary to a finding that Peabody had complied with the notice provisions of § 4-61; and (3) the facts, documents and related arguments upon which Peabody relies to demonstrate its notice and the state's alleged waiver of such notice were not properly submitted to the trial court and are not properly before this court. Additionally, the state argues that, for various reasons, Peabody cannot bring this action pursuant to § 52-592 (a), because, inter alia, the present action was not brought within one year of the federal action, which is, for purposes of the saving statute, the "original action."

We agree with the state that the present action cannot be brought under § 52-592 (a) and is, therefore, untimely. Accordingly, we affirm the judgment of the trial court on that ground.

II

THE SAVING STATUTE

Although the parties raise several issues on appeal, the issue of whether the present action is time barred is dispositive of this appeal. Our conclusion that Peabody cannot rely on § 52-592 (a) therefore obviates the need for consideration of the remaining issues.

Essentially, the state advances two arguments supporting its assertion that the present action may not be brought under § 52-592 (a). First, it claims that the action set forth in Peabody's complaint is not "for the same cause" as the action set forth in either of Peabody's complaints in the first two actions, one of which must be considered the "original action" for purposes of the statute. Alternatively, the state asserts that, even if the present action *were* for the same cause as the

first state action, the present action must then also be for the same cause as the federal action, as the complaints in those two prior actions are nearly identical. The state claims that the federal action, which was the first to be brought, is therefore, for purposes of § 52-592 (a), the "original action." According to the state, because that action was dismissed for lack of jurisdiction more than five years prior to the filing of the complaint in the present action, Peabody may not rely upon § 52-592 (a). We agree with the state's second argument.[9]

Section 52-592, our saving statute, provides in pertinent part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form . . . the plaintiff . . . may commence a new action . . . *for the same cause* at any time *within one year after the determination of the original action* or after the reversal of the judgment." (Emphasis added.) General Statutes § 52-592 (a).

Although a more comprehensive recitation of the procedural history of this case appears at the outset of this opinion, because that history has such a significant bearing on this issue, we provide a brief summary. Peabody's federal action was commenced on July 29, 1991, and dismissed for lack of jurisdiction on June 12, 1992. Peabody brought the first state action on June 2, 1993, well within the three year limitations period of § 4-61. The trial court denied the state's motion to dismiss, from which judgment the state appealed to this court.

---

[9] Accordingly, we need not address the state's first argument.

In *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, supra, 239 Conn. 105, we reversed the judgment of the trial court and remanded the case with direction to grant the state's motion to dismiss, which the trial court did on November 11, 1996. Finally, Peabody brought the present action on August 12, 1997, more than five years after the dismissal of the federal action, and nearly three years after the expiration of the applicable statute of limitations period, but less than one year after the dismissal of the first state action, which was brought within the statute of limitations period. For Peabody to be able to maintain this action, therefore, we must conclude that, for purposes of § 52-592 (a), the "original action" was the first state action rather than the federal action.

To resolve this issue we must determine: (1) whether the federal action and the first state action are "for the same cause," as required by § 52-592 (a); and (2) if they are, which action, the federal action or the first state action, is the "original action" under § 52-592 (a).

A

We assume, without deciding, that the present action is, as Peabody claims, "for the same cause" as the first state action, as required by § 52-592 (a). We must determine, therefore, whether the federal action is for the same cause as the first state action.[10] If it is not, our analysis of this issue ends because the present action would satisfy the requirements of § 52-592 (a) because

---

[10] We note that an action brought in the United States District Court for the District of Connecticut may be an original action for purposes of § 52-592. That section provides in relevant part: "The provisions of this section shall apply to . . . any action brought to the United States circuit or district court for the district of Connecticut which has been dismissed without trial upon its merits or because of lack of jurisdiction in such court. If such action is within the jurisdiction of any state court, the time for bringing the action to the state court shall commence from the date of dismissal in the United States court . . . ." General Statutes § 52-592 (d).

it was brought within one year of the dismissal of the first state action, which would be the original action under the statute, as it would be the first action brought within the applicable statute of limitations period "for the same cause" as the present action. If we conclude, however, that the federal action *is* for the same cause as the present action, we must then determine which of the two first actions—the federal action or the first state action—must be considered the original action for purposes of § 52-592 (a). A comparison of Peabody's complaints in the first two actions compels us to conclude that they are both for the same cause.

The complaint filed in the federal action and that filed in the first state action are virtually identical. The only substantive difference between the two complaints is the following paragraph, which was included in the state complaint but which had not appeared in the federal complaint: "4. To the extent [Standard] incurred the damages and expenses as alleged, such damages and expenses were caused by acts and/or omissions of the [state] and not by any acts and/or omissions of Peabody." In both complaints, Peabody relies upon the same facts, makes the same allegations, and seeks the same relief.[11] In fact, Peabody does not dispute that the two actions are for the same cause, electing instead to argue that this court should adopt a new definition of "original action" for purposes of § 52-592 (a). See part II B of this opinion. In light of the foregoing, therefore, we conclude that both the federal action and the first state action are for the same cause.

B

We must now determine which action is the original action for purposes of § 52-592 (a). In *Pintavalle* v.

[11] In both actions, Peabody sought: (1) dismissal of Standard's complaint against it; (2) a determination that the state be held liable to Peabody to the extent that Peabody was held liable to Standard; (3) costs and expenses; and (4) other relief as may be just and equitable.

*Valkanos*, 216 Conn. 412, 581 A.2d 1050 (1990), this court considered, in depth, the meaning of "original action" as that phrase is used in § 52-592 (a). In that case, the plaintiff's first action was dismissed due to improper service of process. The plaintiff then brought a second action beyond the applicable statute of limitations period, relying on § 52-592 (a). This second action was dismissed for failure to prosecute. Id., 414. Thereafter, the plaintiff brought a third action, again under § 52-592 (a), claiming that, because this third action was commenced within one year of the dismissal of the prior action that had been brought under § 52-592 (a), the statute "saved" the third action. Id., 415.

The trial court in *Pintavalle* granted the defendant's motion for summary judgment, concluding that the third action, which had not been brought within the applicable two year statute of limitations period, was time barred. Id. Additionally, the trial court held that the third action was not saved by § 52-592 (a) because it had not been brought within one year of the dismissal of the first action. Id.

This court noted that the dispositive issue in *Pintavalle* was the meaning of the term "original action" in § 52-592 (a). Id. The defendant argued that the first action filed by the plaintiff within the applicable statute of limitations period must be considered the original action. Id. This interpretation would have prohibited the plaintiff from relying on § 52-592 (a), because the third action was not filed within one year of the dismissal of the first action. The plaintiff, by contrast, argued that "original action" refers to either the next preceding action, or the first action over which the court has jurisdiction. Id. Either interpretation would have saved the third action.

Despite the plaintiff's arguments to the contrary, in *Pintavalle*, we agreed with the defendant's reading of

the phrase "original action." First, we noted that the Appellate Court had addressed the same issue in *Marangio* v. *Shop Rite Supermarkets, Inc.*, 11 Conn. App. 156, 525 A.2d 1389, cert. denied, 204 Conn. 809, 528 A.2d 1155 (1987) and, "[r]elying upon canons of statutory construction and upon the interplay between the words 'new action' and 'original action' in § 52-592 (a), the court concluded that 'original action' means the first action brought by the plaintiff within the period of the applicable statute of limitations. Id., 159–60. The Appellate Court noted that '[t]he statute does not say "may continue the action by bringing suit within one year," or use any words other than those which contemplate an end to the *original action* and the commencement of a *new* action within one year of the end of the *original action*.'" (Emphasis in original.) *Pintavalle* v. *Valkanos*, supra, 216 Conn. 416. We were persuaded by the reasoning of the Appellate Court and concluded that § 52-592 (a) did not save the plaintiff's third action in *Pintavalle*. Id.

In addition to the logic of the *Marangio* opinion, we placed great reliance on the plain language of the statute, noting that, according to Webster's Third New International Dictionary, " '[o]riginal' is defined as 'of or relating to a rise or a beginning: existing from the start . . . .'" *Pintavalle* v. *Valkanos*, supra, 216 Conn. 417. Therefore, the plain language of the statute supported the construction advanced by the defendant in *Pintavalle*. Consequently, we held that, "under the provisions of § 52-592 (a) 'original action' means the first action filed within the time allowed by the applicable statute of limitations." Id., 419. We noted that "[t]his interpretation is consistent with the plain meaning of the statute and protects the policy concerns underlying statutes of limitation." Id.

Returning to the present appeal, we note that the dispositive factor in this case, as it was in *Pintavalle*,

is the interpretation of "original action" as it is used in § 52-592 (a). Therefore, we rely on our oft-stated principles of statutory construction. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *General Motors Corp.* v. *Dohmann*, 247 Conn. 274, 286, 722 A.2d 1205 (1998); *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 195, 708 A.2d 1371 (1998)." (Internal quotation marks omitted.) *Fimiani* v. *Star Gallo Distributors, Inc.*, 248 Conn. 635, 642, 729 A.2d 212 (1999).

The roots of § 52-592 (a) reach as far back as 1862. Public Acts 1862, c. XIV,[12] however, included the phrase "original suit" rather than "original action." In subsequent years, the saving statute was amended several times. In 1902, in addition to other changes not relevant to this issue, the legislature replaced the phrase "original suit" with "original action." See General Statutes (1902 Rev.) § 1127. Because we are unable to research

---

[12] Public Acts 1862, c. XIV, provides in relevant part: "That if, in any action duly commenced within the time limited by law, and which may now be pending or hereafter brought, the writ fails of a sufficient service or return, by any unavoidable accident, or by any default or neglect of the officer to whom it is committed, or if the writ is abated, or the action otherwise avoided or defeated, by the death of any party thereto, or for any matter of form, or if, after a verdict for the plaintiff, the judgment is arrested, or if a judgment for the plaintiff is reversed on a motion in error, or writ of error, or where the plaintiff shall have mistaken his form of action and the suit shall fail for that cause, the plaintiff may commence a new action for the same cause at any time within one year after the abatement, or other determination of the *original suit*, or after the reversal of the judgment . . . ." (Emphasis added.)

the legislative history of statutes of such age, however, the legislature's intent regarding the meaning to be ascribed to "original action," as well as the circumstances surrounding the statute's enactment or amendment, remains unknown. We are left, therefore, with essentially the same tools that were available to us when we decided *Pintavalle*: the plain language of the statute and the general policy it is meant to serve.

"As with any issue of statutory interpretation, our initial guide is the language of the statute itself." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, supra, 239 Conn. 102; *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 756, 674 A.2d 1313 (1996); see also *Fimiani* v. *Star Gallo Distributors Inc.*, supra, 248 Conn. 642. Neither the plain language of the statute pertaining to the phrase "original action," nor the common sense reading that we gave that phrase in *Pintavalle*, have changed since we decided that case less than nine years ago. As we have noted numerous times, and as we reiterated in *Pintavalle*: " 'The words of a statute are to be given their commonly approved meaning unless a contrary intent is clearly expressed.' *Kilpatrick* v. *Board of Education*, 206 Conn. 25, 28, 535 A.2d 1311 (1988)." *Pintavalle* v. *Valkanos*, supra, 216 Conn. 416. We perceive no contrary intent in the statute.

We also have stated that, "[i]n the absence of ambiguity, statutory language should be given its plain and ordinary meaning. *Jones* v. *Civil Service Commission*, 175 Conn. 504, 509, 400 A.2d 721 (1978)." *Pintavalle* v. *Valkanos*, supra, 216 Conn. 416–17. We do not read any ambiguity in the statute. We see no reason to read "original" to mean anything other than "of or relating to a rise or a beginning: existing from the start"; Webster's Third New International Dictionary; which is the dictionary definition we relied on in *Pintavalle*, and which comports with the plain and ordinary meaning of the

word as it is used in common parlance. Consequently, we reaffirm our holding in *Pintavalle* that, "[i]n the context of § 52-592 (a), 'original action' is used to refer to the *first* action filed by the plaintiff within the period of the applicable statute of limitations." (Emphasis in original.) *Pintavalle* v. *Valkanos*, supra, 417.[13]

Peabody argues that the second tool of statutory construction available to us—that is, the policy underlying the statute—militates in favor of its interpretation of "original action." Peabody places great reliance on the remedial nature of § 52-592 (a), stating that "the case law is clear that [§] 52-592 is a remedial statute to be given a liberal interpretation, so that litigants' rights to a trial on the merits are not defeated by strict construction of procedural rules." For support, Peabody quotes from this court's decision in *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 733, 557 A.2d 116 (1989), in which we stated: "The [saving] statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. . . . We, likewise, decline to 'fritter away' the strong remedial purpose of our saving statute, § 52-592." (Citation omitted; internal quotation marks omitted.)

Initially, we note that *Isaac* was decided more than one and one-half years *before* this court decided *Pintavalle*. Therefore, the language in *Isaac* and the remedial nature of the saving statute was fully within the contemplation of this court when we rendered our decision in *Pintavalle*. We see no more reason today to ignore the

[13] We believe that to hold otherwise would require us essentially to overrule *Pintavalle*, which neither party has expressly asked us to do. Implicit in Peabody's argument, however, is such a request.

plain language of the statute and to defer to the remedial nature of the statute than we did then.[14]

Peabody seeks to distinguish *Pintavalle* from the present case by relying on the different procedural postures of the appeals in the two cases.[15] Peabody notes that, in both cases, the first action was filed within the applicable statute of limitations period. In *Pintavalle*, however, the plaintiff brought the second action pursuant

[14] Our position is bolstered by the lack of legislative activity in response to *Pintavalle*. As we recently stated in *Bocchino* v. *Nationwide Mutual Fire Ins. Co.*, 246 Conn. 378, 386–87, 716 A.2d 883 (1998): "When we construe a statute, we act not as plenary lawgivers but as surrogates for another policy maker, the legislature. In our role as surrogates, our only responsibility is to determine what the legislature, within constitutional limits, intended to do. Sometimes, when we have made such a determination, the legislature instructs us that we have misconstrued its intentions. We are bound by the instructions so provided. . . . More often, however, the legislature takes no further action to clarify its intentions. Time and again we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute. . . . In light of our role as surrogates for the legislature, proper respect for the separation of powers has led us to exercise prudence with respect to the overruling of cases that involve the construction of a statute. Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision." (Citations omitted; internal quotation marks omitted.)

We stated our holding in *Pintavalle* very clearly. In the approximately eight and one-half intervening years, "an appropriate interval to permit legislative reconsideration"; id., 387; the legislature has taken no action demonstrating that our interpretation of § 52-592 (a) was incorrect. We, therefore, take such inaction as legislative acquiescence in our construction of § 52-592 (a).

[15] The state also relied on *Rogozinski* v. *American Food Service Equipment Corp.*, 34 Conn. App. 732, 737–38, 643 A.2d 300, cert. denied, 231 Conn. 910, 648 A.2d 156 (1994), and *Marangio* v. *Shop Rite Supermarkets, Inc.*, supra, 11 Conn. App. 160–61, for support for the proposition we announced in *Pintavalle*—that is, that the original action is the first action to be filed within the applicable statute of limitations period. Peabody attempts to distinguish these two cases on the same ground that it attempts to distinguish *Pintavalle*.

to § 52-592 (a), and, after the action's dismissal, brought a third action, relying again on the saving statute.

By contrast, Peabody adverts to the fact that, in the present case, the second action to be brought chronologically—that is, the first state action—was brought within the three year limitations period of § 4-61 and, therefore, Peabody relied only once on § 52-592. In essence, according to Peabody, every plaintiff should be able to rely *one time* on the saving statute, as long as the action is commenced within one year of the determination of an action properly filed within the applicable statute of limitations period, and as long as the action meets all of the other requirements of the statute. This argument is one that this court has not previously had the opportunity to address. We do so now, considering it against the holding of *Pintavalle*, as well as against the purpose of the saving statute.

Although Peabody acknowledges that it is not binding on this court, Peabody cites a Superior Court decision with a similar procedural history in the trial courts as the present case, in which the trial court "construe[d] 'original action' to include the most recent lawsuit filed by the plaintiff within the statute of limitations period." *Ayala* v. *Zachary*, Superior Court, judicial district of Waterbury, Docket No. 094633 (May 25, 1990) (1 Conn. L. Rptr. 671, 672). The trial court in *Ayala* stated that "[t]his construction recognizes the remedial nature of the accidental failure of suit statute by extending the limitation period while at the same time addressing the concerns . . . about indefinite extensions of the applicable statute of limitations." Id.

First, we note that this case is controlled by *Pintavalle* and not by a decision of the Superior Court. Second, we disagree that the policy considerations underlying § 52-592 militate in favor of recognizing Peabody's interpretation of the statute. We recognize, as

we have for more than one century, that § 52-592 (a) "is remedial in nature and, therefore, warrants a broad construction." *Ruddock* v. *Burrowes*, 243 Conn. 569, 575, 706 A.2d 967 (1998); see also, e.g., *Lacasse* v. *Burns*, 214 Conn. 464, 470, 572 A.2d 357 (1990); *Isaac* v. *Mount Sinai Hospital*, supra, 210 Conn. 728; *Broderick* v. *Jackman*, 167 Conn. 96, 98, 355 A.2d 234 (1974); *Ross Realty Corp.* v. *Surkis*, 163 Conn. 388, 393, 311 A.2d 74 (1972); *Baker* v. *Baningoso*, 134 Conn. 382, 387, 58 A.2d 5 (1948); *Johnston* v. *Sikes*, 56 Conn. 589, 591–92 (Superior Court 1888). We do not believe, however, that a statute should be read so broadly or interpreted so expansively that the plain language of the statute, or this court's relatively recent construction of that language, should be ignored. As we stated previously herein, the language is not ambiguous. In the absence of an express legislative intent to read the language in a way different from the common, ordinary usage of the language, we decline to depart from that ordinary usage or from this court's recent precedent, especially in light of the absence of legislative activity in response to that precedent. See footnote 14 of this opinion.

We disagree with Peabody, therefore, that every plaintiff should be able to rely on the saving statute. Section 52-592 (a) was not meant simply to add an additional year to the end of the applicable statute of limitations period. Rather, it was designed to allow plaintiffs to cure certain defects in their actions if they seek to do so within a reasonable period of time. If they file their complaints very early in the statute of limitations period, the period generally will provide them time to discover the types of defects that would satisfy the requirements of § 52-592 (a). Such plaintiffs would not have to rely on that statute, however, as there likely would be enough time remaining under the statute of limitations to cure the defect. If, however, the original action is brought near the end of the statute

of limitations period, the period within which an action for the same cause may be brought extends to one year after the determination of the original action. We conclude that § 52-592 (a) is not available to every plaintiff whose action fails for any of the reasons enumerated in the statute, but, rather, is available to those plaintiffs who bring their original actions within the last year of the applicable statute of limitations periods.[16] We note, however, that, even in such cases, the period within which to file a complaint would not necessarily extend the statute of limitations period by one year but would, instead, extend the filing period only to one year from the date of the failure of the original action.

We acknowledge the strong policy favoring the adjudication of cases on their merits rather than the disposal of them on the grounds enumerated in § 52-592 (a). See, e.g., *Coppola* v. *Coppola*, 243 Conn. 657, 665, 707 A.2d 281 (1998) ("[o]ur practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure" [internal quotation marks omitted]); *Snow* v. *Calise*, 174 Conn. 567, 574, 392 A.2d 440 (1978) ("[i]t is the policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court"). We note, however, that this policy is not without limits. If it were, there would be no statutes of limitations. Even the saving statute does not

---

[16] It could be argued that our decision will encourage plaintiffs to file as late as possible within the statute of limitations period, which could be considered contrary to the public policy favoring the swift resolution of disputes. We note, however, that such a strategy would be a risky one, as those plaintiffs would have only one opportunity to cure any potential defects of the type that would allow reliance on the saving statute. A plaintiff who files early in the statute of limitations period, by contrast, may be able to file multiple times before the limitation period expires. See *Pintavalle* v. *Valkanos*, supra, 216 Conn. 417 n.4 (this interpretation is consistent with "one or more times" language and remedial purpose of statute).

guarantee that all plaintiffs have the opportunity to have their cases decided on the merits. It merely allows them a limited opportunity to correct certain defects in their actions within a certain period of time. If an action, brought pursuant to § 52-592 (a), fails, even for the statutorily enumerated reasons, and if more than one year has passed since the determination of the original action, the plaintiff will not be able to maintain an action, even though the case was not decided on its merits. Therefore, although there is a preference that cases be adjudicated on their merits, the legislature has provided only a limited mechanism by which plaintiffs may "save" deficient actions. One of those requirements is that the action be brought within one year of the determination of the original action, that is, the first action filed within the applicable statute of limitations period.

## C

Finally, we turn to the facts of the appeal before us. As we concluded previously herein, the federal action, which was brought first, and the first state action, which followed, were virtually identical and, therefore, if either can be considered "for the same cause" as the present action, both must be. Therefore, according to our interpretation of the phrase "original action" in § 52-592 (a), the federal action, which was "the first action filed by the plaintiff within the period of the applicable statute of limitations"; *Pintavalle* v. *Valkanos*, supra, 216 Conn. 417; is the original action for purposes of that statute. Because the present action was filed more than five years after the dismissal of the original action, we conclude that it fails to satisfy the requirements of § 52-592 (a). Moreover, we reiterate that this action was commenced nearly three years after the expiration of the statute of limitations provided in § 4-61. Consequently, the present action is, as a matter of law, time barred.

The judgment is affirmed.

In this opinion NORCOTT and PALMER, Js., concurred.

BERDON, J., with whom MCDONALD, J., joins, dissenting. The majority today permits an injustice to stand uncorrected. It does so by ignoring the plain meaning of General Statutes § 52-592 (a),[1] the remedial purpose of the statute, and the mandate of liberal construction that governs our interpretation.

Section 52-592 (a) provides in pertinent part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits [for any of various enumerated reasons], the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . ."

In the present case, the plaintiff asserted a third party complaint against the defendant on two separate occasions; each of these complaints was timely. After both of these complaints had been dismissed[2] (and after the statute of limitations had expired), the plaintiff asserted this direct action against the defendant. By the time the plaintiff asserted the direct action, more than one year had passed since the *earlier* third party complaint was dismissed, but less than one year had passed since the *later* third party complaint was dismissed. In my view, the plaintiff was entitled to commence the direct action, which it asserted "within one year after the determination of" an action "commenced within the time limited by law" (i.e., the later third party complaint).

---

[1] Section 52-592 was amended by Public Acts 1998, No. 98-20, §§ 1 and 2, which added subsection (e). That amendment is not relevant to the present case. In the interest of clarity, references herein are to the current revision.

[2] It is undisputed that the dismissal of each of the plaintiff's third party complaints fell within the scope of § 52-592 (a).

This result comports with the plain meaning of § 52-592 (a), which permits a plaintiff to "commence a new action . . . for the same cause" within one year of the dismissal of *"any action,* commenced within the time limited by law . . . ."[3] (Emphasis added.) As a matter of rudimentary syntax and common sense,[4] it makes no difference whether the plaintiff has asserted prior, unsuccessful actions. Significantly, the statute does not say that the new action must be commenced within

[3] Provided, of course, that the dismissal falls within the scope of § 52-592 (a).

[4] "In interpreting a statute, common sense must be used . . . . *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 4, 363 A.2d 1386 (1975). *Buckley* v. *Warden,* 181 Conn. 286, 290, 435 A.2d 348 (1980); accord *Cannata* v. *Dept. of Environmental Protection,* 239 Conn. 124, 141, 680 A.2d 1329 (1996); *Trumbull* v. *State,* 206 Conn. 65, 80, 537 A.2d 431 (1988) ([c]ommon sense . . . is a highly significant guide to statutory interpretation). The law favors rational and sensible statutory construction. . . . The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. . . . When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable, and not one which leads to difficult and possibly bizarre results. . . . *Maciejewski* v. *West Hartford,* 194 Conn. 139, 151–52, 480 A.2d 519 (1984). We consider the statute as a whole with a view toward . . . obtain[ing] a sensible and rational overall interpretation. *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership,* 237 Conn. 123, 130, 676 A.2d 369 (1996). We have long followed the guideline that [t]he intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. . . . When one construction leads to public mischief which another construction will avoid, the latter is to be favored unless the terms of the statute absolutely forbid [it]. . . . *Bridgeman* v. *Derby,* 104 Conn. 1, 8, 132 A. 25 (1926). . . . *State* v. *Anonymous,* 237 Conn. 501, 514–15, 680 A.2d 956 (1996); accord *State Board of Labor Relations* v. *Freedom of Information Commission,* 244 Conn. 487, 495, 709 A.2d 1129 (1998) (Statutes are to be construed in a manner that will not thwart [their] intended purpose or lead to absurd results. . . . The law favors a rational statutory construction and we presume that the legislature intended a sensible result. . . . *Board of Education* v. *State Board of Education,* 243 Conn. 772, 782, 709 A.2d 510 (1998) ([i]f a statute can be construed in several ways, we will adopt the construction that is most reasonable)." (Internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission,* 249 Conn. 296, 306–308, 732 A.2d 144 (1999).

one year of the dismissal of *the first action* that the plaintiff commenced within the time limited by law. If the legislature had wished to create such a regime, it knew very well how to do so.

To shift focus somewhat, § 52-592 (a) also permits a plaintiff to "commence a new action . . . for the same cause" within one year of the dismissal of "any action, commenced within the time limited by law, [that] has failed *one or more times* to be tried on its merits."[5] (Emphasis added.) In order to make coherent sense of the entire statute, the terms "for the same cause" and "any action" must "include the most recent lawsuit filed by the plaintiff within the statute of limitations period." *Ayala* v. *Zachary*, Superior Court, judicial district of Waterbury, Docket No. 094633 (May 25, 1990) (1 Conn. L. Rptr. 671, 672). This interpretation is necessary in order to give meaning to the statutory phrase "one or more times." Moreover, "[t]his construction recognizes the remedial nature of [§ 52-592 (a)] by extending the limitation period while at the same time addressing the concerns . . . about indefinite extensions of the applicable statute of limitations." Id.

My reading of the statute also comports with the fundamental principle that statutes of limitation exist, in part, "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber . . . ." (Internal quotation marks omitted.) *Bowen* v. *City of New York*, 476 U.S. 467, 481 n.13, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986). In the present case, the plaintiff gave the defendant timely notice that it intended to pursue its claim. Significantly, the defendant has not claimed that it has been prejudiced, that it was the victim of deception, or even that it had any reason to believe that the plaintiff would not pursue its claim.

---

[5] See footnote 3 of this dissent.

If there were any doubts concerning any of my conclusions about the meaning of § 52-592 (a), the rule that we must liberally construe remedial statutes would be sufficient to dispel them.[6] Predictably, the majority has ignored this mandate. Moreover, the majority does no more than pay lip service to what it describes as "the strong policy favoring the adjudication of cases on their merits rather than the disposal of them on the grounds enumerated in § 52-592 (a)."

The majority declines to read § 52-592 (a) in a manner that makes sense of the statutory language or acknowledges either the mandate of liberal construction or the strong public policy favoring adjudication of cases on the merits. Instead, my colleagues in the majority have placed heavy reliance upon *Pintavalle* v. *Valkanos*, 216 Conn. 412, 581 A.2d 1050 (1990). The majority has put its eggs in the wrong basket.

To begin with, the facts of *Pintavalle* are materially different from the facts of the present case. In *Pintavalle*, the plaintiff asserted only one action within the statute of limitations. That action was dismissed. Id., 414. Several months *after* the statute of limitations had expired, the plaintiff commenced a second action.[7] This latter action was dismissed as well. Id. More than one year after the plaintiff's only timely action had been dismissed (but *less* than one year after the plaintiff's untimely second action had been dismissed), the plaintiff asserted a third action. Id., 414–15. The plaintiff claimed that this third action fell within the scope of

---

[6] As Justice Katz and I observed just last year, "§ 52-592 (a) is remedial and is to be liberally interpreted. *Ross Realty Corp.* v. *Surkis*, 163 Conn. 388, 393, 311 A.2d 74 (1972); *Baker* v. *Baningoso*, 134 Conn. 382, 387, 58 A.2d 5 (1948); *Johnston* v. *Sikes*, [56 Conn. 589, 596 (Superior Court 1888)]." (Internal quotation marks omitted.) *Ruddock* v. *Burrowes*, 243 Conn. 569, 582, 706 A.2d 967 (1998) (*Berdon, J.*, with whom *Katz, J.*, joined, dissenting); see also *Pintavalle* v. *Valkanos*, 216 Conn. 412, 417, 581 A.2d 1050 (1990) ("§ 52-592 is a remedial statute and must be construed liberally").

[7] This untimely second action was saved by operation of § 52-592 (a).

§ 52-592 (a) because "the legislature intended to permit plaintiffs to bring a potentially unlimited number of suits as long as each action is brought within one year of the failure of the prior action." Id., 416.

The court in *Pintavalle* properly recognized that the plaintiff's argument "defeat[s] the basic purpose of statutes of limitation, namely, promoting finality in the litigation process." Id., 417. This conclusion has absolutely nothing at all to do with the present case. Because the plaintiff in this case asserted the action upon which it relies[8] *before* the statute of limitations had expired, the direct action is saved by operation of § 52-592 (a). In sharp contrast to the position advocated by the plaintiff in *Pintavalle*, my interpretation of § 52-592 (a) contains a built-in time limit: the protection afforded by the statute expires one year after the determination of the latest action "commenced within the time limited by law." This is a far cry from the "potentially limitless extension" that the *Pintavalle* court rejected. *Pintavalle* v. *Valkanos*, supra, 216 Conn. 417.

The majority emphasizes the following line from *Pintavalle*: "under the provisions of § 52-592 (a), 'original action' means the first action filed within the time allowed by the applicable statute of limitations." Id., 419. The majority has taken this line out of context. In the very next sentence, the *Pintavalle* court emphasized that "[t]his interpretation is consistent with the plain meaning of the statute *and protects the policy concerns underlying statutes of limitation*." (Emphasis added.) Id. As I have explained, the policy concerns underlying this interpretation of § 52-592 (a) are limited to the kind of "potentially limitless extension" sought by the plaintiff in *Pintavalle*. Id., 417. For this reason, we must recognize a similar limitation upon the meaning that the *Pintavalle* court ascribed to the statute.

---

[8] That is, the later third party complaint.

Moreover, the line that the majority has extracted from *Pintavalle* has nothing to do with the facts of that case, in which the plaintiff asserted only *one* action within the statute of limitations. Accordingly, everything that the court said about "*the first action* filed within the time allowed by the applicable statute of limitations" is pure dicta, wholly irrelevant to the resolution of the controversy between the parties.[9] (Emphasis added.) Id., 419.

Significantly, my interpretation of § 52-592 (a) is consistent with the holding of *Pintavalle*. The plaintiff in that case commenced his third action more than one year after the trial court had dismissed the only action that the plaintiff had asserted within the statute of limitations. Accordingly, the *Pintavalle* court's conclusion that the plaintiff could not take refuge in the shelter of § 52-592 (a) comports with my analysis of the plain meaning of the statute.

Finally, the dicta in *Pintavalle* upon which the majority hangs its hat finds no support in the language of § 52-592 (a). The statute refers to two different actions: (1) "any action, commenced within the time limited by law" (the original action) and (2) a "new action . . . for the same cause [commenced] at any time within one year after the determination of the original action . . . ." It is apparent that the legislature used the term "original action" in order to refer back to "*any action* commenced within the time limited by law"—which could be the first timely action that the plaintiff asserted or the twenty-first.[10] (Emphasis added.) There is nothing

---

[9] According to Black's Law Dictionary (6th Ed. 1991), dicta "go beyond the facts before court and therefore are individual views of author of opinion and not binding in subsequent cases as legal precedent." Because dicta are "made without argument or full consideration of the point, [they] are not the professed deliberate determinations of the [author]." Id.

[10] The statute would have been neither accurate nor coherent if the legislature had used the term "any action" in place of the term "original action."

in the text of the statute to support the *Pintavalle* court's dicta that the "original action" must be the plaintiff's first timely action.[11] If the legislators had meant what the dicta in *Pintavalle* says they meant, then they would have drafted a radically different statute.[12] If there were any doubt that we should reject the dicta in *Pintavalle*, the mandate of liberal construction would be sufficient to dispel it.

In my view, the majority has disregarded the text of § 52-592, the purpose of statutes of limitation in general and of § 52-592 (a) in particular, and the mandate of liberal construction. Worst of all, the majority's mindless formalism does violence to the strong public policy that—as the majority concedes—animates § 52-592 (a).

Accordingly, I dissent.

---

[11] In fact, nothing in the text of § 52-592 (a) suggests that the term "original action" has any independent, substantive meaning whatsoever. Instead, the context makes it perfectly clear that "original action" is simply a cross reference to "any action commenced within the time limited by law . . . ." General Statutes § 52-592 (a).

[12] Section 52-592 (a) cannot be harmonized with the dicta in *Pintavalle* without making each of the following fundamental changes to the text of the statute: (1) omit the term "any action"; (2) omit the reference to an action that has failed "one or more times"; (3) omit the use of "original action" as a synonym for "any action"; (4) insert a reference to the first action that the plaintiff asserts within the statute of limitations; and (5) change the use of "original action" so that it is a synonym for the first timely action that the plaintiff asserts.